Kevin Drew McRAE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–01225–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 2, 2004.

Rehearing Overruled Jan. 10, 2005.

W. Troy McKinney, Schneider & McKinney, P.C., Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney—Harris County, Alan Curry, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION ON MOTION FOR REHEARING

ELSA ALCALA, Justice.

Appellant, Kevin Drew McRae, has challenged our opinion of July 1, 2004, by filing a motion for rehearing, to which the State has filed its response. We grant rehear-

ing, withdraw our opinion of July 1, 2004, and issue this opinion in its stead.

Appellant pleaded not guilty to the misdemeanor offense of driving while intoxicated (DWI) and pleaded true to a punishment-enhancement paragraph. After a jury convicted appellant, the trial court found the enhancement paragraph true and assessed punishment at 30 days' confinement in jail. In three points of error, appellant contends that the trial court erred by (1) admitting appellant's "custodial" oral statements, (2) refusing to give a "probable cause" jury instruction, and (3) admitting evidence of improperly administered field-sobriety test results. We affirm.

## Background

A Houston Police Department (HPD) motorcycle-patrol officer saw appellant's vehicle run a red light and nearly cause a collision with four other vehicles. Appellant's vehicle made a left turn without a turn signal at the intersection of Richmond and Shepherd in southwest Houston and then continued on, taking up two lanes of traffic. When the officer stopped the vehicle, he noticed that appellant, who was driving, had bloodshot eyes, slurred speech, and a strong odor of an alcoholic beverage on his breath. The officer administered the following three field-sobriety tests to appellant: the Horizontal Gaze Nystagmus (HGN), the Rhomberg, and the one-leg-stand. The HGN and one-leg-stand tests indicated that appellant was impaired, but appellant performed normally on the Rhomberg test. After administering the field-sobriety tests, the officer asked appellant where he had been. Appellant replied that he had been at a restaurant, where he shared a pitcher of beer with some friends. The officer formed the opinion that appellant was intoxicated, arrested him for DWI, and contacted dispatch for a patrol car to transport appellant to the police station.

At the police station, an HPD officer who was assigned to the accident division as an accident investigator and intoxilyzer operator offered appellant the opportunity to take an intoxilyzer test and to perform the field-sobriety tests on videotape. Appellant took the intoxilyzer test twice. The first result revealed that he had an alcohol concentration above the legal limit at .106 grams of alcohol per 210 liters of breath, and the second result indicated a .108 concentration. The videotape of appellant shows that he declined to perform the one-leg-stand test because of a prior leg injury, but performed three other field-sobriety tests. Although he performed "okay" on the finger-to-nose test, he took longer than normal to estimate 30 seconds on the Rhomberg test. On the walk-and-turn test, appellant missed stepping on the line heel-to-toe twice and made an incorrect turn. From appellant's performance on these tests, the accident investigator concluded that appellant was impaired and had lost the normal use of his physical faculties.

## Expert Testimony Concerning Field–Sobriety Tests

In his third point of error, appellant contends that the trial court committed harmful, reversible error by permitting expert testimony that violated rule 702 of the Rules of Evidence because the officer improperly administered the HGN test and the one-leg-stand test.

█ We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard and will not reverse a trial court's ruling unless it falls outside the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App.2002). Rule 702 of the Rules of Evidence states that "if scientific,

technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. Expert testimony regarding novel scientific evidence must be reliable to be admissible under rule 702. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App.1992). To be considered reliable, evidence based on a scientific theory must satisfy the following three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been applied properly on the occasion in question. *Id.*

### HGN Test

▉▉▉ Appellant contends that the trial court erred by allowing the arresting officer to testify that appellant had six clues, the maximum number possible, on the HGN test because, by the officer's own admission, he administered the test to appellant incorrectly. HGN evidence is reliable, admissible scientific evidence under rule 702 when performed by a police officer who is certified by the National Highway Transportation Safety Administration (NHTSA)[1] and who applies the technique properly. *Emerson v. State*, 880 S.W.2d 759, 768 (Tex.Crim.App.1994) (concluding that HGN evidence met the criteria in

*Kelly*, 824 S.W.2d at 572). The HGN technique is applied properly when the officer follows the standardized procedures outlined in the DWI Detection Manual published by NHTSA. *See id.* In determining whether a person's performance of the HGN test suggests intoxication, an officer must look for the following clues in each eye: (1) the lack of smooth pursuit, (2) distinct nystagmus at maximum deviation, and (3) the onset of nystagmus prior to 45 degrees. *Compton v. State*, 120 S.W.3d 375, 377 (Tex.App.-Texarkana 2003, pet. ref'd) (citing NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., U.S. DEP'T OF TRANSP., DWI DETECTION AND STANDARDIZED FIELD SOBRIETY TESTING STUDENT MANUAL at VIII–6). Slight variations in the administration of the HGN test do not render the evidence inadmissible or unreliable, but may affect the weight to give the testimony. *Compton*, 120 S.W.3d at 378.

The undisputed testimony establishes that the arresting officer did not administer the HGN technique properly to appellant. Although the officer testified that he administered all three parts of the HGN test to appellant, he admitted at appellant's Administrative License Revocation (ALR) hearing that he testified that he had administered only two out of the three required parts of the HGN because he did not conduct the onset-of-nystagmus portion of the test. The officer also admitted making several other misstatements concerning the HGN test.[2] When confronted

---

1. The arresting officer was trained by NHTSA, is certified to perform the HGN test, and relied on that training and materials in performing the HGN test on appellant. Appellant has not challenged the officer's qualifications.

2. The officer's ALR testimony and trial testimony differ concerning the number of seconds it took to conduct the smooth pursuit and maximum deviation portions of the HGN test. We recognize that slight deviations in

the timing of the HGN test have been determined not to affect the HGN technique or the admissibility of the HGN evidence. *Compton v. State*, 120 S.W.3d 375, 378 (Tex.App.-Texarkana 2003, pet. ref'd). The officer also admitted that he made only one pass of each eye rather than two passes of each eye during the HGN test and further testified that this failure to make two passes of each eye was a violation of the guidelines in the NHTSA manual. *Cf. Quinney v. State*, 99 S.W.3d 853, 858 (Tex. App.-Houston [14th Dist.] 2003, no pet.)

with the procedural errors made in administering the HGN test that did not comply with the NHTSA guidelines, the officer was asked whether there was a "valid HGN test" on appellant. The officer replied that there was none.

Under these circumstances, which show that the officer acknowledged that the HGN test administered to appellant was invalid, we cannot conclude that the HGN technique was applied properly, as required by *Emerson. See* 880 S.W.2d at 768. Likewise we cannot conclude that the error was merely a slight variation in the administration of the HGN test. *See Compton,* 120 S.W.3d at 378. We therefore conclude that the trial court abused its discretion by allowing the officer to testify that appellant had six clues on the HGN test because the technique applying the HGN was improperly administered and resulted in an invalid test. *See id.*

### Harm Analysis

■■■ We must disregard nonconstitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or had but a slight effect. *Solomon v. State,* 49 S.W.3d 356, 365 (Tex.Crim.App.2001); *see* Tex.R.App. P. 44.2(b). In making this determination, the question is not simply whether there was sufficient evidence to support the verdict. *Bagheri v. State,* 119 S.W.3d 755, 763 (Tex.Crim.App.2003). Instead, the reviewing court should consider the entire record, including testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire, if applicable. *Id.* (citing *Motilla v. State,* 78 S.W.3d 352, 355–56 (Tex.Crim.App.2002)). Important factors include the nature of evidence supporting the verdict, the character of the alleged error, and how it

might be considered in connection with other evidence in the case. *Bagheri,* 119 S.W.3d at 763 (citing *Motilla,* 78 S.W.3d at 355). We should also consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Id.; Motilla,* 78 S.W.3d at 356.

The disputed issue in the trial concerned whether appellant was intoxicated: the wrongfully admitted HGN testimony was a piece of the State's evidence establishing appellant's intoxication, albeit a minor part of the evidence. At trial, appellant challenged the State's assertion that he was intoxicated by pointing to evidence that would suggest that he was not intoxicated, such as (1) his proper performance of the finger-to-nose test at the police station, (2) his admission to drinking only a part of a pitcher of beer, (3) his prior leg injury as an explanation for his difficulties with the physical portions of the field-sobriety tests, (4) a witness who testified that appellant did not look intoxicated on the videotape taken of appellant at the police station, and (5) his proper performance of the Rhomberg field-sobriety test taken before his arrest, although he later performed that test again at the police station without similar success by estimating 30 seconds outside the normal range.

The State's evidence on the issue of appellant's intoxication shows that appellant (1) drove recklessly by running a red light and nearly causing a collision of several other vehicles, as well as committing other traffic violations; (2) smelled of a strong odor of alcoholic beverage; (3) had bloodshot eyes; (4) slurred his speech; (5) was slow in responding to the officer's instructions; (6) performed poorly on the walk-and-turn field-sobriety test administered at the police station; (7) admitted he had been drinking alcohol; and (8) had an

(holding that NHTSA's manual only requires     one pass of each eye).

alcohol concentration of .106 grams of alcohol per 210 liters of breath in his intoxilyzer sample. Additionally, the officer at the police station who administered the field-sobriety tests on videotape testified that, in his opinion, appellant had lost the normal use of his physical faculties. The HGN evidence was cumulative of other evidence establishing intoxication and constituted a very minor portion of the State's evidence that appellant was intoxicated. Although the State maintained, in closing argument, that the first two prongs of the HGN test were administered correctly, the prosecutor also stated, in closing argument, "[T]hey (the defense) say that it (the third prong of the HGN test) wasn't done properly. Maybe so," and thus acknowledged appellant's contention that the third portion of the test was incorrectly administered. Additionally, although the HGN evidence was conveyed by an alleged HGN expert, more persuasive scientific evidence quantified and established appellant's intoxication through the intoxilizer. *See Motilla,* 78 S.W.3d at 355.

Although the HGN evidence was conveyed by an alleged HGN expert, we have fair assurance, after examining the record as a whole, that the evidence did not influence the jury or had but a slight effect. *See Schutz,* 63 S.W.3d at 444. Given the evidence in the record as a whole, we conclude that the HGN evidence had little effect, if any, on the jury's decision to convict appellant, *see id.,* and that conviction would have been certain without that erroneously admitted evidence. *See Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim.App.1998). Because appellant's substantial rights were thus not affected, we conclude that error in admitting the HGN evidence was harmless and must, therefore, be disregarded. *See King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); Tex.R.App. P. 44.2(b).

## One–Leg Stand

Appellant contends that the trial court erred by admitting evidence of the one-leg-stand test under rule 702 because the arresting officer improperly performed it and therefore violated rule 702. Appellant contends that, under *United States v. Horn,* 185 F.Supp.2d 530 (D.Md.2002), testimony concerning the one-leg-stand test is admissible only if it meets the *Kelly v. State* criteria for expert testimony. *See Kelly,* 824 S.W.2d at 573.

The *Horn* court held that the one-leg-stand test could constitute either lay witness testimony or expert testimony, depending on how it was used at trial. *See Horn,* 185 F.Supp.2d at 556. Acknowledging that the probative value of the one-leg-stand derives from the basic nature of observing human behavior, the *Horn* court concluded that the one-leg-stand test was lay witness testimony if the officer testified only about her observations of a defendant's "appearance, coordination, mood, ability to follow instructions, balance, the presence of the smell of an alcoholic beverage ... and the observations of the defendant's performance of the standardized field[-] sobriety tests...." *Id.* at 555–56. The court further concluded, however, that an officer's otherwise lay witness testimony can become expert testimony when, among other circumstances, the officer uses terms like "standardized clues," "test," "pass," or "fail." *Id.*

■ Texas, like Maryland, allows peace officers to testify as lay witnesses about their observations of a suspect's performance on the one-leg-stand test. Texas courts have held that, because an officer's testimony about a suspect's coordination, balance, and mental agility problems exhibited during the one-leg-stand test are observations grounded in common knowledge, the officer's testimony based on these observations is governed by rule 701

(lay witness opinion testimony) and not rule 702 (testimony by experts). *Compare* Tex.R. Evid. 701 *with* Tex.R. Evid. 702; *see also Emerson,* 880 S.W.2d at 763 (explaining that peace officer need not qualify as expert to express opinion whether person he observed was intoxicated). The one-leg-stand test is grounded in the common knowledge that excessive alcohol consumption can cause problems with coordination, balance, and mental agility, and its sole purpose is to reveal clues or symptoms of impairment. *See Smith v. State,* 65 S.W.3d 332, 347 (Tex.App.-Waco 2001, no pet.). Yet, it is also common knowledge that a variety of physical and environmental conditions, having nothing to do with intoxication, can also cause these symptoms. *Id.*

At least one Texas court has determined that one-leg-stand testimony can cross from lay witness testimony into expert testimony. *See id.* (holding that officer testifying that Smith had three out of four clues on one-leg-stand test and, therefore, that there was 83 percent probability that Smith was intoxicated above the legal limit, impermissibly gave one-leg-stand test "imprimatur" of scientific accuracy without proof that officer's "expert" testimony was reliable, as required by *Emerson* ). Other than prohibiting a statistical correlation between the one-leg-stand test and BAC, however, Texas courts have not yet determined where the line should be drawn in determining what constitutes lay versus expert testimony concerning the one-leg-stand test.

■■■ We conclude that the testimony by the arresting officer concerning the one-leg stand, which follows, is lay witness testimony governed by rule 701. The officer told the jurors that, during the one leg-stand, a defendant places one foot six inches above the ground, whichever foot the defendant chooses, while the defendant stands with hands down by his side, and counts from 1001 to 1030. The officer testified that the test is a "divided attention" test that requires the defendant to do more than one thing at the same time, specifically: standing up, holding his foot off the ground, and counting, all while maintaining his balance. Four clues that an officer seeks during the one-leg stand are swaying, using arms for balance, dropping a foot, and hopping.

During appellant's performance of the one-leg stand, the officer saw him drop his foot, use his arms for balance, sway, and fail to follow instructions by counting one through eight using single digits instead of thousands. The officer concluded that appellant was intoxicated because he could not follow directions. The officer acknowledged that a person with a leg injury, like appellant, would have difficulty performing the one-leg-stand test, but because the person can choose the leg on which to stand and the leg to hold up, a person with an injured leg could nevertheless perform the test successfully.

Appellant has not referred us to any Texas authority, and we are aware of none, holding that, when an officer uses terms like "standardized clues," "test," or "divided attention," the officer is no longer testifying as a lay witness and begins to testify as an expert, who must, therefore, be qualified. *See Horn,* 185 F.Supp.2d at 555–56. We disagree with *Horn* to the extent that it holds that using these words automatically changes lay testimony into expert testimony. We conclude that, under the circumstances demonstrated here, the words "clues," "test," and "divided attention" merely refer to observations by the peace officer, based on common knowledge observations of the one-leg stand, and do not convert the lay witness testimony into expert testimony. We hold that the officer's testimony, as described above, con-

cerning his observations of appellant's performance on the one-leg-stand test were admissible under Rule 701.

■ As for the remainder of the officer's testimony, in which he referred to the one-leg-stand test as a "recognized field sobriety test" "certified" by NHTSA, we assume without deciding that rule 702 applies because the testimony concerns scientific, technical, or specialized testimony beyond the observations of a lay witness. *See* Tex.R. Evid. 702. Under the circumstances presented here, however, we conclude that admitting the "expert" testimony was harmless. First, the officer admitted that he did not follow the NHTSA guidelines accurately when he administered the one-leg-stand test because he stopped the test after appellant dropped his foot after six seconds and did not administer the test for at least thirty seconds. Second, the officer acknowledged that his errors in administering the one-leg-stand test meant that the test was not valid according to the NHTSA guidelines. To the extent that the officer informed the jurors that the one-leg-stand has technical or scientific accuracy because it is certified by NHTSA, his testimony further established that he did not administer the test correctly under their guidelines. Because the officer could not, therefore, testify that appellant was intoxicated under the NHTSA guidelines, any error in admitting evidence concerning the NHTSA certification of the one-leg-stand test is harmless.

We hold that any error in admitting testimony about NHTSA's certification and guidelines for the one-leg-stand test is harmless under the circumstances presented here. These circumstances include the officer's acknowledging that appellant's test was not administered according to the NHTSA guidelines and was, therefore, invalid. After excluding the testimony about NHTSA's certification and guidelines for the one-leg-stand test, we further hold that the jury was properly allowed to consider the remainder of the one-leg-stand evidence as lay witness testimony of intoxication based on appellant's dropping his foot, using his arms for balance, swaying, and failing to follow instructions.

We overrule appellant's third point of error.

## Article 38.23   Instruction

■ In his second point of error, appellant contends that the trial court committed reversible error by refusing to include an instruction on probable cause in the jury charge, in accordance with article 38.23 of the Code of Criminal Procedure. Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.2004–2005). Appellant contends that the arresting office's inconsistent testimony concerning how he administered the field-sobriety tests and his improper administration of those tests required a jury charge on whether probable cause existed for appellant's arrest. The State contends that there is no actual dispute about what occurred when the motorcycle-patrol officer stopped appellant, and that the appropriateness of the arresting officer's administration of certain field-sobriety tests is a legal question for the court, not the jury.

Article 38.23 provides as follows:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was

obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM. PROC. ANN. art. 38.23. A fact issue about whether evidence was legally obtained may be raised "from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable." *Garza v. State*, 126 S.W.3d 79, 85 (Tex.Crim.App.2004). The trial court must include an article 38.23 instruction in the jury charge only if there is a factual dispute about how the evidence was obtained. *Id.* The legality of the search or arrest is a question of law, not fact, when, as here, essential facts concerning the search or arrest are not in dispute. *Id.* at 86.

Only the arresting officer testified concerning the following: the reasons for stopping appellant's vehicle; appellant's performance on the field-sobriety tests; and the reasons why the officer concluded that appellant was intoxicated. In contending that there is a fact issue requiring an article 38.23 instruction in the jury charge because the arresting officer had made prior inconsistent statements and admittedly performed some of the tests incorrectly, appellant mistakes an irrelevant factual dispute for a material legal dispute. There was no dispute about the facts. The officer admitted his inconsistent statements and that some of his field-sobriety tests were administered incorrectly. The trial court was then required to apply the law to the undisputed facts to make a legal conclusion about probable cause. No jury instruction was required because there were no facts in dispute. We conclude that the trial court did not err by refusing to include in the jury charge an article 38.23 instruction concerning the legality of appellant's arrest.

We overrule appellant's second point of error.

## "Custodial" Oral Statements

In his first point of error, appellant contends that the trial court erred by allowing the arresting officer to testify about appellant's oral statements because the officer did not read appellant his *Miranda* rights or comply with article 38.22 of the Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp.2004–2005); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Article 38.22 governs the requirements that police must follow for oral custodial statements that are to be admitted against an accused in criminal proceedings.

A traffic stop does not constitute "custody" for *Miranda* purposes. *State v. Stevenson*, 958 S.W.2d 824, 828 (Tex.Crim.App.1997) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984)). Subsequent events, however, may cause a noncustodial encounter to escalate into custodial interrogation. *Stevenson*, 958 S.W.2d at 828; *Dowthitt v. State*, 931 S.W.2d 244, 254–55 (Tex.Crim.App.1996). The following four factors are relevant in determining whether a noncustodial encounter has escalated into custody: (1) the existence of probable cause to arrest, (2) the subjective intent of the police, (3) the focus of the investigation, and (4) the subjective belief of the defendant. *Stevenson*, 958 S.W.2d at 828; *Dowthitt*, 931 S.W.2d at 254. Factors two and four have become irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officials; the custody determination is based entirely on objective circumstances. *Dowthitt*, 931 S.W.2d at 254 (citing *Stansbury v. California*, 511 U.S. 318, 324–26,

114 S.Ct. 1526, 1530, 128 L.Ed.2d 293 (1994)).

 A DWI investigation that includes questioning and field-sobriety tests does not, without more, rise to the level of a custodial interrogation. *Stevenson,* 958 S.W.2d at 828–29 (citing *Berkemer,* 468 U.S. at 423, 104 S.Ct. at 3141–42). In *Berkemer,* the suspect was stopped and asked to perform a field-sobriety test. 468 U.S. at 423, 104 S.Ct. at 3141–42 After the suspect failed the test, the law enforcement officer asked the suspect whether he had been using intoxicants. *Id.* The officer did not tell the suspect that he was in custody until after he was arrested. *Id.* The Supreme Court held that the suspect was not in custody for *Miranda* purposes until the formal arrest. *Id.*

The arresting officer's conduct here was no more intrusive than in *Berkemer.* As in *Berkemer,* the stop began as a DWI investigation, and questioning occurred after appellant failed the field-sobriety test. *See id.* Also as in *Berkemer,* the officer had probable cause to arrest after appellant failed the field-sobriety test. *See* 468 U.S. at 423, 104 S.Ct. at 3141–42; *Stevenson,* 958 S.W.2d at 829 n. 7. The existence of probable cause did not convert the investigation into a custodial situation. *See Berkemer,* 468 U.S. at 423, 104 S.Ct. at 3141–42; *Stevenson,* 958 S.W.2d at 829 n. 7. That appellant was the focus of a criminal investigation did not convert the roadside stop into an arrest. *See Berkemer,* 468 U.S. at 423, 104 S.Ct. at 3141–42; *Stevenson,* 958 S.W.2d at 829.

Nothing in the record suggests that the arresting officer manifested any intent to arrest appellant until after appellant admitted consuming the alcohol. *See Stevenson,* 958 S.W.2d at 829. Although the arresting officer testified that he had probable cause to arrest appellant and that appellant was under arrest after he per-formed the one-leg-stand test, the officer did not convey those conclusions to appellant. Only after appellant made his statements to the officer did the officer advise appellant that he was under arrest and notify the dispatcher that he needed a police unit to transport appellant. Under these circumstances, the subjective beliefs of appellant and the arresting officer concerning whether appellant was in custody are irrelevant. *See id.*

Because appellant was not in custody when the arresting officer questioned him, we conclude that appellant's statements were admissible even though the officer had not read appellant his *Miranda* rights. Furthermore, because article 38.22 pertains only to custodial statements and because appellant was not in custody when he made the statements to the arresting officer, article 38.22 does not apply. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22.

We overrule appellant's first point of error.

### Conclusion

We affirm the judgment of the trial court.