**Opinion issued October 3, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00240-CR

————————————

**MATTHEW RYAN MCCARTHY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1757818**

---

## MEMORANDUM O P I N I O N

A jury convicted Matthew Ryan McCarthy of driving while intoxicated.[1]

The trial court assessed punishment at eight days' confinement in the Harris

---

[1] TEX. PENAL CODE ANN. § 49.04 (West Supp. 2012) (amended effective Sept, 1, 2011); *see* Act of Apr. 25, 1995, 74th Leg., R.S., ch. 76, § 14.55.

County jail and a $750 fine. In three issues, McCarthy contends that the trial court erred in (1) denying his motion to suppress and admitting the results of his Horizontal Gaze Nystagmus (HGN) test, (2) admitting two demonstrative videos showing eyes with and without HGN, and (3) allowing the State to make improper jury argument over his objections. We affirm the trial court judgment.

## Background

On an early morning in May 2011, Officer M. Hardt of the Houston Police Department was monitoring the intersection of Westheimer and South Shepherd in Houston. At approximately 2:00 a.m., he saw McCarthy make an illegal left turn at the intersection and travel five blocks at an estimated speed of forty-five miles per hour, fifteen miles per hour over the speed limit. Hardt stopped McCarthy and asked for his driver's license. McCarthy said that he did not have a driver's license with him. McCarthy told Hardt his name and that he was twenty years old. McCarthy also said that he was coming from a bar but had not been drinking. Hardt noticed that McCarthy had red, glassy, and bloodshot eyes, and detected a strong odor of alcohol on his breath. McCarthy had five passengers in his vehicle; Hardt believed that all had been drinking.

Officer Hardt administered four field sobriety tests to McCarthy—the HGN, the one-leg stand, the walk-and-turn, and the Rhomberg—which were recorded on

the camera in Hardt's vehicle. Hardt explained or demonstrated the tests, and testified that McCarthy appeared to understand the instructions. Hardt administered the HGN test first. He checked McCarthy's eyes for tracking ability and equal pupil size to rule out a brain injury or illness, and observed that McCarthy's pupils were equal. According to Hardt, McCarthy displayed all "six clues" indicating impairment in the HGN test—lack of smooth pursuit, nystagmus or an involuntary jerking movement in the eyes at maximum deviation, and onset of nystagmus before forty-five degrees in both eyes. Hardt then administered the walk-and-turn test to McCarthy. Hardt testified that McCarthy displayed six of eight possible clues for impairment. He did not keep his balance during the instructions, started the test too soon, used his arms for balance, missed heel-to-toe steps, and made an improper turn during the test. Hardt next administered the one-leg-stand test. McCarthy displayed three of four clues—he swayed, used his arms, and dropped his foot. Last, Hardt conducted a Rhomberg test. Hardt acknowledged that he did not give McCarthy adequate instructions on the Rhomberg test and that it could be disregarded but opined that McCarthy performed poorly on or failed each of the tests.

Officer Hardt testified that based on everything he observed that night and the totality of the stop, McCarthy had lost the normal use of his mental and physical faculties and was impaired, and that alcohol was the cause of his

impairment. Hardt asked McCarthy for breath and blood samples, and advised him of the consequences of refusing samples. McCarthy declined to provide a blood sample but agreed to provide a breath sample. Approximately ten minutes later, after he was handcuffed and placed in the patrol vehicle, McCarthy declined to provide the breath sample. McCarthy also stated, "Why did I drive, man?" According to Hardt, McCarthy appeared to be upset.

Before trial, McCarthy filed a motion to suppress all the field sobriety tests, including the HGN test. At the hearing on the motion, McCarthy contended that the strobe lights on Officer Hardt's vehicle affected the test's validity and that Hardt did not administer the test as required by the National Highway Transportation Safety Administration DWI Detection & Standardized Field Sobriety Testing Student Manual.[2] NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., U.S. DEP'T OF TRANSP., DWI (DRIVING WHILE INTOXICATED) DETECTION &

---

[2] At the pretrial hearing and trial, McCarthy and the State argued that the NHTSA manual set out requirements or recommendations but did not offer the manual in evidence. The State's appellate brief states that McCarthy "presented the trial court with a copy of the manual . . . ." At the hearing, McCarthy's counsel stated, "[W]e'll give you a copy of the manual." McCarthy quotes from the 2006 edition of the manual in his appellate brief. We take judicial notice of the contents of the 2006 NHTSA manual. *See Emerson v. State*, 880 S.W.2d 759, 765–66 (Tex. Crim. App. 1994) (taking judicial notice of HGN technique as set out in NHTSA manual); *see also Webster v. State*, 26 S.W.3d 717, 721 n.4 (Tex. App.—Waco 2000, pet. ref'd) (noting that parties did not provide a copy of NHTSA manual and taking judicial notice of contents of 1992 NHTSA manual). In future cases, it would aid our disposition if counsel would mark as an exhibit for the trial court a copy of the pertinent provisions in the manual or at least identify the edition and particular sections or pages used in arguments to the trial court or questioning witnesses.

STANDARDIZED FIELD SOBRIETY TESTING STUDENT MANUAL (2006 ed. Apr. 2009) (2006 NHTSA manual). The State responded that the strobe lights did not affect the test, and that Hardt performed the test properly within permissible limits. No testimony or other evidence was presented at the hearing. The trial court denied the motion to suppress.

The case proceeded to trial. Officer Hardt, the only witness, testified about McCarthy's traffic stop and arrest, including the administration of the field sobriety tests. The court admitted into evidence the video of the arrest, without objection. The video, including the field sobriety tests, was played for the jury. The court also admitted into evidence two demonstrative exhibits—videos showing eyes without nystagmus and with nystagmus in HGN testing on another individual—over McCarthy's objection and with a limiting instruction. At the close of the evidence, McCarthy again moved to suppress the field sobriety tests, asserting that they were not conducted according to the NHTSA protocol, and then moved for an instructed verdict, asserting that the State failed to make a prima facie case of intoxication. The trial court denied the motions.

A jury found McCarthy guilty of driving while intoxicated. The trial court sentenced McCarthy to eight days' confinement in the Harris County jail.

**Admission of the HGN Test Results**

In his first issue, McCarthy contends that the trial court erred in denying his motion to suppress and admitting the results of his HGN test because the State failed to establish that the test was properly administered in accordance with NHTSA protocol and thus failed to satisfy the third prong of *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992).

**A.      Standard of Review**

We review the trial court's denial of McCarthy's motion to suppress for an abuse of discretion. *Long v. State*, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991); *see Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005) (stating that trial court's ruling on admissibility of scientific expert testimony is reviewed under abuse of discretion standard) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but review *de novo* the trial court's application of the law to the facts if resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g); *see Kelly*, 824 S.W.2d at 574 (reviewing admission of DNA evidence for abuse of

discretion and determining whether trial court decision was within zone of reasonable disagreement). We generally consider only the evidence adduced at the suppression hearing unless the parties consensually re-litigate the issue at trial, in which case we also consider relevant trial testimony. *Weatherred*, 15 S.W.3d at 542; *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996); *Ervin v. State*, 333 S.W.3d 187, 203 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

## B.    The HGN test

Under Texas Rule of Evidence 702, the proponent of scientific evidence must show, by clear and convincing proof, that the proffered evidence is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact in issue. *Weatherred*, 15 S.W.3d at 542; *Kelly*, 824 S.W.2d at 572–73. In a criminal case, the reliability inquiry for evidence requires the proponent of the evidence to satisfy three criteria: (1) the underlying scientific theory is valid, (2) the technique applying the theory is valid, and (3) the technique was properly applied on the occasion in question. *Weatherred*, 15 S.W.3d at 542; *Quinney v. State*, 99 S.W.3d 853, 857 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing *Kelly*, 824 S.W.2d at 573). Testimony concerning HGN testing is considered scientific evidence, subject to the requirements of *Kelly*. *Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994). In *Emerson*, the Court of Criminal Appeals took judicial notice of (1) the validity of the scientific

7

theory and (2) the validity of the technique applying the theory. *Id.* The Court concluded that the remaining admissibility issue—whether the officer properly applied the theory—was established by the officer's testimony that he followed the procedure as outlined in the DWI Detection Manual. *See id.*

Accordingly, to establish the reliability of HGN testing, the proponent does not have to prove that the theory of HGN testing and the technique of applying that theory are reliable. *Id.* at 768–69. But, *Emerson* squarely places the burden on the proponent of the HGN testing—in this case, the State—to establish that the officer properly applied the HGN test. *See id.* at 769 (concluding that HGN technique was applied properly "on the occasion in question" and the officer "followed" the DWI Detection Manual). Whether the HGN test is properly applied is decided on a case-by-case basis. *Somers v. State*, 368 S.W.3d 528, 536 n.27 (Tex. Crim. App. 2012); *see Kerr v. State*, 921 S.W.2d 498, 502 (Tex. App.—Fort Worth 1996, no pet.) ("In each individual case . . . the State still must show by expert testimony that the test was properly administered.").[3] The State, therefore, must offer evidence to establish that the HGN test is properly applied on the occasion in question.

When administering an HGN test, an officer must follow the standardized procedures outlined in the NHTSA manual. *Emerson*, 880 S.W.2d at 768; *McRae*

---

[3] The State incorrectly contends that *Emerson* established the relevance of HGN-testing evidence and shifted the burden to the evidence's opponent to demonstrate that it should be excluded for some other reason.

*v. State*, 152 S.W.3d 739, 743 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). In administering the test, an officer looks for three criteria: (1) the lack of smooth pursuit—an inability to pursue an object, or stimulus, moving horizontally across the suspect's field of vision smoothly; (2) distinct, sustained, and pronounced nystagmus at the eye's maximum deviation; and (3) the onset of nystagmus at less than or equal to forty-five degrees. *Emerson*, 880 S.W.2d at 766 (citing 1992 NHTSA manual); *McRae*, 152 S.W.3d at 743 (citing *Compton v. State*, 120 S.W.3d 375, 377 (Tex. App.—Texarkana 2003, pet. ref'd)). An officer must look for these criteria in each eye, for a total of six "clues." *Emerson*, 880 S.W.2d at 766 (citing 1992 NHTSA manual at VIII–15). To ascertain these clues, an officer conducts "passes"—asking an individual to follow an object or stimulus, such as a pen, with his or her eyes. *See Kamen v. State*, 305 S.W.3d 192, 195 n.1 (Tex. App.— Houston [1st Dist.] 2009, pet. ref'd). The procedures also require an officer to screen for factors such as corrective lenses, brain damage, medical disorders, or blindness, which could lead potentially to an incorrect determination as to whether a suspect is intoxicated. *Emerson*, 880 S.W.2d at 766; *see* 2006 NHTSA manual at VIII-6 (setting out procedures to observe for equal pupil size and tracking ability to screen for possible medical disorder, injury or blindness).

## C. McCarthy's motion to suppress and Officer Hardt's testimony

McCarthy moved to suppress the HGN test results on the basis that Officer Hardt did not comply with the NHTSA manual procedures. At the hearing on his motion, McCarthy argued in pertinent part that Hardt (1) failed to make the required number of passes for a complete HGN test, omitting the passes to check for the onset of nystagmus before forty-five degrees; (2) did not hold the stimulus at maximum deviation for four seconds on each of the maximum deviation passes as the NHTSA manual required, and (3) moved the stimulus vertically while holding it at maximum deviation. The State argued that the NHTSA manual provided only recommendations for time and number of passes and that Hardt administered the test within acceptable limits. The State further argued that Hardt checked for nystagmus before forty-five degrees. No testimony or other evidence was offered. The trial court overruled the motion, stating that "the test is going to be admitted; and it goes to the weight and not the admissibility."

In their appellate briefs, McCarthy and the State rely on Officer Hardt's trial testimony regarding his administration of the HGN test. Normally, such evidence would be too late because the trial court ruled on the motion to suppress and that ruling preserved error on the admissibility of the evidence; however, we may consider relevant trial testimony "when the parties consensually re-litigate the suppression issue during the trial on the merits." *Weaver v. State*, 265 S.W.3d 523,

10

533 (Tex. App.—Houston [1st Dist.] 2008, pet ref'd) (citing *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007)). Because McCarthy reasserted his motion to suppress during trial and both parties rely on this evidence in their contentions about whether the trial court abused its discretion, we conclude that the parties consensually re-litigated the issue and that we may consider Officer Hardt's trial testimony in determining whether the trial court abused its discretion in denying his motion to suppress.

## D.     The HGN test was admissible

Officer Hardt testified that he was trained and certified in standard field sobriety testing, including the HGN test, and had administered the HGN test many times. He explained that alcohol or drugs generally will cause nystagmus, which is an involuntary jerking of the eye. The HGN test is a standard field sobriety test and is helpful to determine whether an individual is impaired by alcohol. During an HGN test he looks for six clues, and the number he observes leads to a decision whether an individual is impaired.

Before administering the HGN test, Officer Hardt asked McCarthy the appropriate screening questions. Hardt checked McCarthy's eyes for tracking ability and pupil size to determine whether he could follow the stimulus and whether there were signs of brain injury or illness. McCarthy's pupils were equal; "[e]qual is normal." McCarthy explained that the test includes three parts. First, he

11

looks for lack of smooth pursuit, which is "where the eyes are not able to follow the stimulus smoothly." Second, when each eye is at maximum deviation—a point at forty-five degrees, which is "the farthest the eyes can look towards the left or to the right"—he looks for distinct involuntary jerking. Finally, he looks for an initial onset of involuntary jerking before forty-five degrees. Hardt testified that he performed all three parts of the test on McCarthy.

As to how an HGN test should be administered, Officer Hardt stated that he knew he "did not perform a hundred percent" of the test; however, he testified that he probably made six passes. He explained that the NHTSA manual does not require a prescribed number of passes; it simply recommends repeating passes. Hardt observed six clues when he administered the test to McCarthy—lack of smooth pursuit, nystagmus at maximum deviation, and onset of nystagmus before forty-five degrees in both eyes. He testified that McCarthy performed poorly on the test.

McCarthy contends that the video of his arrest confirms that Officer Hardt did not follow NHTSA procedures when he administered the HGN test to McCarthy. Specifically, he asserts that Hardt performed the smooth pursuit portion in approximately eight seconds, one-half of the sixteen seconds the manual

requires.[4] He next asserts that Hardt completed the distinct and sustained nystagmus portion too quickly and held the stimulus at maximum deviation for two to three seconds on each eye instead of the four seconds the manual requires.[5] He asserts that, as to Hardt's "final two passes, it is unclear exactly what he is checking for" and that they look similar to the previous two passes. If he were checking for maximum deviation and onset of nystagmus before forty-five degrees at the same time, he administered the test improperly. Finally, McCarthy contends that Hardt omitted the step to check for equal tracking in McCarthy's eyes.[6] McCarthy argues that "the scene video confirms" that Hardt did not follow the procedures outlined in the NHSTA manual.

McCarthy contends that the trial court could not have reasonably concluded that Officer Hardt applied the HGN technique properly—given Hardt's admission that he did not follow standardized procedures—and, therefore, abused its

---

[4]   The manual states, "Movement of the stimulus should take approximately two seconds out and two seconds back for each eye. Repeat the procedure," or eight seconds for each eye. If the pass is repeated, this portion of the test should take approximately sixteen seconds. 2006 NHTSA manual at VIII-7.

[5]   In the maximum deviation portion, "the DWI Detection Manual indicates that an individual's eye should be kept at maximum deviation, or as far to the side as possible, for a minimum of four seconds." *Compton*, 120 S.W.3d at 378. If each eye is tested twice, the maximum deviation portion should require at least sixteen seconds plus the time necessary to position the eye to be tested. *Id.*

[6]   McCarthy bases his arguments, in part, on the State's argument at the hearing on his motion to suppress. The prosecutor stated that Officer Hardt did two passes for smooth pursuit, from which McCarthy argues that Officer Hardt did not check for equal tracking.

13

discretion. McCarthy asserts that Hardt's testimony is analogous to the officer's testimony in *McRae v. State*. In *McRae*, the undisputed testimony established that the officer did not administer the HGN test properly. 152 S.W.3d at 743. The officer admitted that he did not administer all three parts of the HGN test to the defendant and did not comply with the NHTSA guidelines because he made only one pass of each eye, and acknowledged that the test was invalid. *Id.* at 743–44. This Court, therefore, concluded that the trial court abused its discretion in allowing the officer to testify about the HGN test results. *Id.* at 744.

We disagree with McCarthy that Officer Hardt's testimony required exclusion of the HGN test results. In this case, unlike *McRae*, Hardt did not testify that the test he administered was invalid. When asked if he noticed on the video that he did not perform "all the passes," Hardt stated, "I did not notice; but I know I did not perform a hundred percent." Hardt, however, further testified that he performed an appropriate number of passes and performed all three parts of the test.

Moreover, in *McRae*, this Court recognized that "[s]light variations in the administration of the HGN test do not render the evidence inadmissible or unreliable, but may affect the weight to give the testimony." *Id.* at 743 (citing *Compton*, 120 S.W.3d at 378); *see Plouff v. State*, 192 S.W.3d 213, 220 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In *Compton*, the court of appeals

14

concluded that an officer's slight deviation in the number of seconds taken to conduct the lack-of-smooth-pursuit and maximum-deviation portions from the number recommended in the NHTSA manual did not invalidate the test results. 120 S.W.3d at 378–79.

McCarthy contends that Officer Hardt's deviations are not "slight deviations" allowed under the NHTSA manual and that reliance on *Compton* is misplaced because the *Compton* court misinterpreted the preface to the manual. In discussing variations in administering an HGN test, the *Compton* court noted the NHTSA manual's "prefatory language acknowledges that although the tests, when administered under ideal conditions, 'will generally serve as valid and useful indicators of impairment,' slight variations from the ideal 'may have some affect [sic] on the evidentiary weight given to the results.'" 120 S.W.3d at 378 (quoting NHTSA manual). As McCarthy points out, the preface's example of a slight variation is "the inability to find a perfectly smooth surface at roadside[.]" (2006 NHTSA manual). He asserts that the preface provides no support for allowing variations in the test procedures such as those alleged in this case, and contends that the test procedures must meet the *Emerson* requirement that the HGN technique is properly applied.

Although noting the manual's prefatory language, the *Compton* court relied on the HGN test procedures set out in the NHTSA manual in determining that

slight variations do not require exclusion of HGN results as unreliable. *Compton* did not ignore either *Emerson* or the NHTSA manual in reaching its conclusion. *See* 120 S.W.3d at 378 (noting that *Emerson* takes into account that test will not always be administered in strict conformity with officer's training). As the Fourteenth Court of Appeals explained in *Plouff v. State*:

> In *Compton,* the Texarkana Court of Appeals properly applied all the requirements and factors in *Emerson* and simply concluded that a police officer's slight deviation in the number of seconds taken to conduct the HGN test from the number of seconds recommended by the DWI Detection Manual did not invalidate test results otherwise indicating that defendant was driving while intoxicated. *Compton,* 120 S.W.3d at 378. Despite appellant's contentions, this opinion does not conflict with the holdings in *Emerson.* The *Emerson* court stated that officers administering the HGN test must follow the standardized NHTSA procedures and concluded that the officer in *Emerson* had followed the HGN technique prescribed by the NHTSA. *See Emerson,* 880 S.W.2d at 768–69. The *Emerson* court did not address how courts should handle situations in which the officer follows the NHTSA technique and procedure for HGN testing but deviates slightly from the approximate times set forth by the NHTSA. *See Compton,* 120 S.W.3d at 378. Therefore, *Compton* does not conflict with *Emerson.*

192 S.W.3d at 221. We reject McCarthy's contention that *Compton* and its progeny are contrary to *Emerson's* requirement that an officer must follow the NHTSA manual's procedures.

The Fourteenth Court of Appeals agreed with the *Compton* court that "it would be unreasonable to conclude that any variation in administering the tests, no matter how slight, could automatically undermine the admissibility of an individual's performance of the tests." *Id.* (citing *Compton*, 120 S.W.3d at 738). In

16

*Plouff*, the defendant contended that the officer performed portions of the test too quickly, did not repeat passes, and held the stimulus for only one second at maximum deviation. 192 S.W.3d at 219–20. The court of appeals concluded that the claimed variations in the test's administration were slight and did not affect admissibility. *Id.* at 220. The trial court was free "to believe any or all of the evidence presented" and to evaluate that evidence, and thus the HGN results were admissible. *See id.* at 222.

Similarly, the trial court in this case could have reasonably concluded that Officer Hardt properly administered the test, based on its assessment of the video from the arrest and Officer Hardt's trial testimony that he looked for equal pupil size and equal tracking in McCarthy's eyes. *See Liles*, 2009 WL 3152174, at *6 (concluding that officer met NHTSA manual requirements because he testified that he checked defendant for pupil size and equal tracking as he performed HGN test); *Webster v. State*, 26 S.W.3d 717, 722 (Tex. App.—Waco 2000, pet. ref'd) (stating that screening for other causes of nystagmus can be performed while conducting HGN test and is consistent with NHSTA manual). The trial court also could have reasonably concluded that Hardt conducted the appropriate passes to check for each of the clues—lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and onset of nystagmus before forty-five degrees—in an appropriate amount of time. *See Quinney*, 99 S.W.3d at 858 (stating that "the

17

manual does not require a minimum number of passes"). Finally, the trial court also could have reasonably concluded that any variations in the administration of the test were slight and did not affect admissibility. We conclude that the trial court's ruling was within the zone of reasonable disagreement and, thus, the trial court did not abuse its discretion in denying McCarthy's motion to suppress. We overrule McCarthy's first issue.

### Admission of Demonstrative Videos

In his second issue, McCarthy contends that the trial court erred by admitting two demonstrative HGN videos into evidence because the State (1) willfully failed to disclose the videos in violation of the trial court's discovery order and (2) failed to authenticate the videos. The videos show eyes with and without nystagmus during an HGN test on another individual.

### A.    Disclosure of the videos

The trial court signed a pretrial order requiring the State to provide defense counsel, "all documents, photographs, electronic audio and/or video recordings, investigative charts or diagrams to be introduced at trial" at least ten days before trial. The State was required to produce all such items that were "in the possession of the State's attorneys or which are known, or with exercise of due diligence, known to be in the possession of the investigating officers or other agents of the State." Additionally, the State was required to provide "[a]s soon as is practicable,

any document, diagram, model, summary or other chart prepared by the State as demonstrative evidence or 'jury aid.'"

The State did not provide the videos to McCarthy's counsel before trial. When the State started questioning Officer Hardt about the videos, McCarthy's counsel asked to view them "before the jury does, outside their presence." The trial court allowed a recess. After the recess and outside the presence of the jury, McCarthy objected on the basis that the State did not disclose the videos as required under the pretrial discovery order:

> In order to properly represent Mr. McCarthy and prepare an effective defense for him, I need to be able to rely on your Order. They have not shown those to us before. I have not had an opportunity to prepare any type of questions for them or examination of the officer on those issues, or those videos; so we object to them on that ground.

The prosecutor responded that, as demonstrative evidence, disclosure was required as soon as was practical, which was the day of trial. He explained that he created or copied the videos at 7:00 p.m. the night before trial from the "TDCAA web site" and that the videos had been used frequently in other cases. He asserted that McCarthy's counsel had opportunity to see the videos "if he's in the practice of DWI cases" and view them on the TDCAA web site. McCarthy's counsel responded that he had not seen the videos admitted in any of the DWI cases that he had tried and indicated that the prosecutor could have called or e-mailed when he copied the videos. "[T]o drop this now is unduly—an unfair surprise and unduly

19

prejudicial to Mr. McCarthy." The trial court ruled that it would allow the videos with an instruction that they were for demonstrative purposes only.

When the jury returned and the State offered the videos "for demonstrative purposes only," McCarthy renewed his objection to their admission but did not request a continuance or additional recess. The trial court overruled McCarthy's objection and admitted the videos with a limiting instruction:

> Ladies and gentlemen, you're going to see a video of an HGN test. Okay? Please understand: This is not the defendant. Okay? This is not evidence to be used as guilt or innocence. It's only to educate you on what the officer was looking for. You understand?

On appeal, McCarthy contends that the State was required to disclose the videos at least ten days before trial because they are not a "document, diagram, model, summaries or charts." Alternatively, McCarthy argues that if the videos fall within the portion of the pretrial order governing demonstrative evidence, disclosure "as soon as is practicable" was required and the State failed to do so. The State contends that disclosure was not required at least ten days before trial because it offered the videos only as demonstrative evidence and did not possess them until the night before the trial.

We conclude that McCarthy did not preserve this complaint for appeal. The trial court granted his counsel's request to view the videos outside the jury's presence. After counsel viewed the videos, McCarthy objected asserting that the State had not complied with the trial court's discovery order and alleging surprise

20

and lack of opportunity to prepare. The proper procedure when alleging surprise due to violation of a trial court's discovery order is to object or ask for a postponement or continuance of the trial. *Duff-Smith v. State*, 685 S.W.2d 26, 33 (Tex. Crim. App. 1985). The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise. *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982); *Cruz v. State*, 762 S.W.2d 624, 627 (Tex. App.—Houston [14th Dist.] 1988, no pet.); *see also Walker v. State*, 321 S.W.3d 18, 23 n.2 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd).

## B.    Authentication of the demonstrative videos

Before demonstrative evidence is presented to the jury, it must be properly authenticated. *Baker v. State*, 879 S.W.2d 218, 220 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd); *see* TEX. R. EVID. 901(a) . McCarthy contends that the trial erred because the State did not properly authenticate the videos. McCarthy, however, did not object to the videos on the basis of authentication. McCarthy's counsel objected to the videos only on the basis that the State failed to disclose them as required by the court's discovery order.

Accordingly, McCarthy did not preserve error regarding the proper authentication of the videos because he did not object on that basis at trial. To preserve a complaint for appellate review, the record must show that a specific and

timely complaint was made to the trial judge and that the trial judge ruled on the complaint. The complaining party must have informed the trial judge what was wanted and why the party was entitled to it. *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial. *Id.*

We conclude that McCarthy did not preserve his complaints regarding the admission of the videos and overrule his second issue.

### Improper Jury Argument

In his third issue, McCarthy contends that the trial court allowed the State to make improper jury arguments and that the cumulative effect of the improper statements harmed him. McCarthy complains about three comments by the State and contends that the trial court erred in failing to grant a mistrial.

The law requires a fair trial, free from improper argument by the State. *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991). The permissible areas of jury argument include: (1) a summation of the evidence presented at trial, (2) a reasonable deduction drawn from that evidence, (3) an answer to the opposing counsel's argument, or (4) a plea for law enforcement. *Guidry v. State,* 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Carmen v. State,* 358 S.W.3d 285, 300 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). When the trial court sustains an appellant's objection and instructs the jury to disregard an argument, "[t]he only

22

adverse ruling—and thus the only occasion for making a mistake—was the trial court's denial of the motion for mistrial." *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011); *see Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) ("A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile."). We review the denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim App. 2004) (holding that, when trial court sustains objection and instructs jury to disregard but denies defendant's motion for mistrial, issue is whether trial court abused its discretion by denying mistrial). This analysis focuses on (1) the "severity of the misconduct" (also defined as the "magnitude of the prejudicial effect of the [State's] remarks"), (2) the curative measures taken by the trial court, and (3) the certainty of conviction absent the misconduct. *See Hawkins*, 135 S.W.3d at 77. In most instances, an instruction to disregard will cure any error. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

## A.    Comment on McCarthy's failure to testify

McCarthy first contends that the State commented on his failure to testify by the statement that "[t]he defendant refuses to admit that he made any mistakes." The State responds that this statement did not directly address McCarthy's failure to testify, and may have referred to his conduct shown on the video from the night

23

of his arrest. When McCarthy objected to the State's argument as a comment on his decision not to testify, the trial court responded:

> Leave that out of it.
>
> They have nothing—the defendant doesn't have to say anything. And strike—just forget about what he said. Ladies and gentlemen, remember from the very beginning that I told you: This—voir dire—I mean, opening and closing is not evidence. It's just what the attorneys want to tell you.
>
> You may continue.

McCarthy then moved for a mistrial, which the court denied.

"Prosecutorial comment that refers to an accused's failure to testify violates the accused's Fifth Amendment right against compelled self-incrimination." *Canales v. State*, 98 S.W.3d 690, 695 (Tex. Crim. App. 2003) (citing U.S. CONST. amend. V); *see also* TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2005). "It is well settled that a prosecutor's comment amounts to a comment on a defendant's failure to testify only if the prosecutor manifestly intends the comment to be, or the comment is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify." *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); *see also Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

The prosecutor made the comment at the end of a discussion about Officer Hardt's trial testimony, including a statement that Hardt "admitted his mistakes."

The prosecutor then stated, "The defendant refuses to admit that he made any mistakes." Without deciding whether the prosecutor's statement constituted an improper comment on McCarthy's failure to testify, we conclude that any error was cured by the trial court's instruction to disregard the statement. Except in the most blatant of cases, an instruction to disregard improper argument is considered a sufficient response by the trial court, even for comments on a defendant's failure to testify. *See Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999) (concluding that harm from comment on defendant's failure to testify was cured by instruction to disregard); *Longoria v. State*, 154 S.W.3d 747, 763–64 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (same); *Linder v. State*, 828 S.W.2d 290, 300–01 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (same). Given the nature of the statement, the immediacy of the trial court's instruction to disregard, and the circumstances of this case, we do not believe that the remark was so blatant as to require a mistrial.[7]

---

[7] On appeal, McCarthy contends that the trial court's instruction was insufficient to cure the harm because the court did not "instruct the jury that it could not consider [his] silence in its decision." We note that the trial court also included the following instruction in the charge:

> Our law provides that a defendant may testify in his own behalf if he elects to do so. This, however, is a privilege accorded a defendant, and in the event he elects not to testify, that fact cannot be taken as a circumstance against him. In this case, the defendant has elected not to testify, and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever as a circumstance against the defendant.

**B.      Comment that McCarthy subpoenaed his five passengers to testify**

McCarthy next contends that the State injected a false factual statement into the case by stating that McCarthy had a subpoena in place to have his friends testify. McCarthy's counsel objected, stating that "[t]here's no subpoena in place. I have no idea what he's talking about. We can check the Court's file," and that the State was shifting the burden of proof. The trial court responded, "Go on. Again, ladies and gentlemen, this is only closing." McCarthy's counsel again objected, asserting that the State was shifting the burden of proof, and moved for a mistrial, which the trial court denied. McCarthy did not request an instruction or object to the trial court's statement as an insufficient instruction.

McCarthy contends that, because the prosecutor's statement was false, the circumstances in this case differ from circumstances in which courts have concluded that a prosecutor's statement about a defendant's ability to subpoena witnesses was not improper. *See Torres v. State*, 552 S.W.2d 821, 825 (Tex. Crim. App. 1977) ("Where the record reflects that witnesses were available to testify for

---

You are instructed that the law provides that the election by the defendant not to testify shall not be taken as a circumstance against him, and you must not allude to, comment on, or discuss in your retirement the election of the defendant not to testify in this cause, nor will you refer to or discuss any matter not before you in evidence, and any juror doing so may be guilty of contempt of court.

If any juror starts to mention the defendant's election not to testify in this case, then it is the duty of the other jurors to stop him at once.

26

an accused and were not called, a prosecutor's argument that an accused offered no evidence does not constitute improper argument."); *Shears v. State*, 895 S.W.2d 456, 463 (Tex. App.—Tyler 1995, no pet.) (concluding that statement that defendants have "power to call people to the stand just like the State does" was not reversible error). These cases recognize that the State may comment on a defendant's failure to produce testimony from a source other than the defendant. Although the prosecutor here incorrectly stated that the defense had a subpoena in place, the prosecutor may have commented on McCarthy's failure to call a witness other than himself. *See Bible v. State*, 162 S.W.3d 234, 249 (Tex. Crim. App. 2005) (stating that State may comment on defendant's failure to call certain witnesses and such comment is not impermissible attempt to shift burden of proof).

The prosecutor's statement, although false, was not so prejudicial and inflammatory as to require a mistrial. The evidence at trial included Officer's Hardt's testimony that McCarthy had five passengers in his vehicle when arrested. The State's closing argument included the unobjected-to statement, "And, finally, where are the defendant's friends?" Additionally, in his closing argument, McCarthy's counsel indicated that the State could have called McCarthy's friends as witnesses, but did not. When McCarthy objected to the State's comment, the trial court stated, "This is only closing." A few minutes earlier, the court had instructed the jury that "closing is not evidence. It's just what the attorneys want to

tell you." Given these circumstances, including the immediacy of McCarthy's counsel's objection pointing out the falsity of the statement and the trial court's response, we do not believe that the remark was so blatant as to require a mistrial. We conclude that the trial court did not abuse its discretion in denying the request for a mistrial based on the incorrect statement about the subpoena.

## C.    Comment on McCarthy's admission to "21 years and up" club

McCarthy next complains that the State injected a factual statement outside the record by asking, "How did he get into a club that was 21 years and up . . . ?" McCarthy's counsel objected; the trial court sustained the objection. McCarthy contends that, without an instruction to disregard the statement, any harm caused by the improper argument was not cured.

McCarthy's counsel, however, did not request an instruction. To complain of improper jury argument, a defendant must generally object to the argument and pursue the objection to an adverse ruling. *Cockrell v. State*, 933 S.W.3d 73, 89 (Tex. Crim. App. 1996). If the trial court sustains the objection, the defendant must request an instruction to disregard and move for a mistrial. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *Washington v. State*, 127 S.W.3d 111, 115–16 (Tex. App.—Houston [1st Dist.] 2003, no pet.). McCarthy did not request an instruction or further object. The trial court granted McCarthy all the relief he requested. McCarthy did not preserve a complaint for appeal. *See Washington*, 127

28

S.W.3d at 116 (holding that defendant who did not obtain adverse ruling on objection to jury argument did not preserve point of error for appeal) (citing TEX. R. APP. P. 33.1).

## D. Cumulative effect

Last, McCarthy contends that the cumulative effect of the State's improper arguments harmed his substantial rights. McCarthy cites *Lopez v. State,* 705 S.W.2d 296 (Tex. App.—San Antonio 1986, no pet.), to support his contention that he was harmed because "[t]he likelihood of a jury disregarding improper arguments diminishes each time instruction must be given." In *Lopez*, the court of appeals concluded that the State repeatedly attacked the defense counsel's efforts to represent his client and repeatedly exceeded the bounds of proper jury argument. In this case, the prosecutor did not repeatedly ignore the court's rulings and return to an argument on which the trial court had sustained an objection. Considered cumulatively, we conclude that the trial court did not abuse its discretion in denying a mistrial.

We overrule McCarthy's third issue on appeal.


Harvey Brown
Justice

Panel consists of Justices Jennings, Brown, and Huddle.

Do not publish. Tex. R. App. P. 47.2(b).