**Opinion issued May 16, 2017**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-15-00840-CR

———————————

### SOFIANE BENAFFANE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 248th District Court
### Harris County, Texas
### Trial Court Case No. 1427857

---

### MEMORANDUM OPINION

A jury convicted Sofiane Benaffane of murder and sentenced him to 50 years' confinement, rejecting his claim that he shot Dontrell Kelly in defense of himself or his girlfriend, Amanda Morales. On appeal, Benaffane contends in eight issues that (1) insufficient evidence supports his conviction, (2) the trial court erroneously

instructed the jury on provocation and the discussion-of-differences qualification on self-defense, (3) the trial court erred by failing to grant a mistrial after the prosecutor mentioned that Morales had been indicted for murder, and (4) the trial court abused its discretion in admitting and excluding evidence. We affirm.

## Background

Benaffane testified at trial. He contended that he shot Kelly in self-defense and in defense of Morales. In February 2014, Benaffane met Morales, who was working as a stripper. They started dating and shortly thereafter, Benaffane learned that Morales had previously worked as a prostitute when he encountered her ex-pimp while picking her up from work. The pimp blocked Benaffane's car with his own, stuck a gun in his waistband, and approached Benaffane's car, causing Morales to flee from the car back into the club. Benaffane testified that after this incident, he purchased two guns, an AK-47 and a handgun, because he was concerned for his and Morales's safety.

According to Benaffane, on April 24, 2014, Morales called him in a panic. She told him that a pimp, Dontrell Kelly, had her and had taken her car keys. Morales asked Benaffane to come get her, though she did not know where she was. Intending to go look for Morales, Benaffane grabbed his AK-47 and the handgun, and called a friend, Hassan Worthy, to ask him to "back [him] up."

2

While he was driving to pick up Worthy, Morales texted Benaffane that Kelly was taking her to Vibe Lounge. Benaffane picked up Worthy and drove to Vibe, but Morales was not there yet. Benaffane explained to the owner of Vibe, his friend Carlos Barrios, that Morales was being held against her will by Kelly, and asked Barrios to let him know when Morales and Kelly arrived. Shortly thereafter, Barrios texted Benaffane that Morales and Kelly had arrived and told Benaffane that he would let him and Worthy into Vibe through the back door.

Several videos recorded in and around Vibe that night were admitted and played for the jury. One video showed Morales and Kelly walking into Vibe. After they entered, Barrios pulled Morales aside and spoke to her. After Barrios talked to Morales, she walked over to Kelly, who had walked to a seat while the other two talked. Barrios then let Benaffane and Worthy into the club and told them where Kelly was sitting. Benaffane denied that Barrios signaled to him to approach Kelly, but the video showed Barrios make a hand motion and then both Barrios and the bartender walked away from Kelly to head towards the front of the club. The video showed Benaffane, with the AK-47, and Worthy, with the handgun, approach Kelly.

Benaffane testified that approximately 20 seconds elapsed between the time he entered the club and the time he confronted Kelly, but the video shows that Benaffane waited inside near the back door for approximately nine minutes before approaching Kelly. According to Benaffane, he did not immediately shoot Kelly

3

when he approached him because his intent was only to scare Kelly into letting Morales go. Benaffane admitted that the video never shows Kelly grab or restrain Morales, and that Barrios was able to pull her aside without Kelly showing any concern. But Benaffane testified that he thought it was necessary to use the threat of force because of his knowledge of the world of prostitution and his belief that he would never see Morales again if he did not intervene.

The video showed Kelly began to struggle with Worthy when Benaffane and Worthy approached with guns pointed at Kelly. Kelly wrestled away Worthy's gun and shot Benaffane five times. Benaffane returned fire and testified that he shot Kelly because he "wanted to stop the shooting." In the melee, another club-goer was shot, but not killed. After shooting Kelly, Benaffane began punching him "to make sure he doesn't shoot anymore." Benaffane then grabbed the two guns and crawled out the back of the club. Video shows Worthy retrieving the guns and giving them to Morales, who put them in the trunk of Benaffane's car.

On cross-examination, Benaffane conceded that he and Worthy were wearing gloves, that he did not call police after receiving Morales's phone call, and that Kelly did not have a weapon. Benaffane testified that he never intended to kill Kelly.

The jury found Benaffane guilty of murder, implicitly rejecting his claims of self-defense and defense of Morales. After the punishment phase, the jury sentenced Benaffane to 50 years in prison. Benaffane appealed.

4

## Sufficiency of the Evidence

In his third issue, Benaffane challenges the sufficiency of the evidence to support his conviction and the jury's implicit rejection of his claim of self-defense and defense of Morales.

## A.    Standard of Review and Applicable Law

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010). We defer to the responsibility of the factfinder to fairly resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from the facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 898–99. In so doing, we may not reevaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Brooks*, 323 S.W.3d at 898–99. This standard applies equally to circumstantial and direct evidence. *Laster v. State*, 275 S.W.3d 512, 517–18 (Tex. Crim. App. 2009).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE § 19.02. A "person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* § 9.31(a). Deadly force is justified "to protect the actor against" another's "use or attempted use of unlawful deadly force" and to prevent another's "imminent commission" of murder, kidnapping, sexual assault, or robbery. *Id.* § 9.32(a). A person is justified in using deadly force against another to protect a third person if, "under the circumstances the actor reasonably believes them to be, the actor would be justified" in using force against the other under section 9.31 or 9.32 "to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect" and "the actor reasonably believes that his intervention is immediately necessary to protect the third person." *Id.* § 9.33.

The defendant bears the initial burden to produce evidence supporting a justification defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces some evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion does not require the State to produce evidence; it requires only that it prove its case beyond a reasonable doubt. *Id.*; *Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.— Houston [14th Dist.] 2010, pet. ref'd). Thus, to convict a defendant of murder after

6

he has raised the issue of self-defense, the State is required to prove the elements of the offense beyond a reasonable doubt and to persuade the jury beyond a reasonable doubt that the defendant did not kill in self-defense. *Zuliani*, 97 S.W.3d at 594; *McClesky v. State*, 224 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

## B. Analysis

Benaffane admitted killing Kelly by shooting him. Benaffane argues that insufficient evidence supports the jury's conclusion that he had the requisite intent to murder because his only intent when he confronted Kelly was to scare him and have him release Morales. But "[w]hen a deadly weapon is fired at close range, and death results, the law presumes an intent to kill." *Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Childs v. State*, 21 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see also Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) (jury may infer intent to kill from use of deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of weapon).

Benaffane also argues that the evidence was insufficient to support the jury's implicit rejection that he was acting in self-defense or defense of Morales. Benaffane argues that the evidence shows that he went to Vibe armed because he was fearful for his and Morales's safety, that he did not immediately shoot Kelly,

and that he only fired shots after first being shot. While this evidence supports Benaffane's self-defense and defense-of-a-third person claims, the jury was not required to believe his explanation about his motivation and reasoning for confronting Kelly. Among other things, for a self-defense and defense-of-a-third person justification defense to apply, the actor must "reasonably believe" that the use of force is "immediately necessary." TEX. PENAL CODE §§ 9.31(a), 9.33. The evidence showed that Benaffane did not call police after learning about Morales's predicament, and the video showed him waiting in the rear of the club nearly nine minutes before confronting Kelly—two pieces of evidence that would permit a rational jury to conclude that Benaffane did not have a reasonable belief that the use of deadly force was immediately necessary.

Likewise, the fact that Benaffane shot his gun only after Kelly shot him does not preclude a rational jury from concluding beyond a reasonable doubt that Benaffane did not act in self-defense or in defense of a third person. The video shows, and Benaffane acknowledged, that he and Worthy cornered Kelly, who was unarmed, with guns drawn. The video shows that Kelly shot at Benaffane only after wrestling the handgun away from Worthy, as Benaffane approached him with an AK-47.

In short, the jury's decision to accept or reject Benaffane's justification defenses hinged largely on its assessment of his credibility, and there was

8

considerable evidence that the jury could credit that undermined Benaffane's testimony. Based upon the evidence, we hold that a rational jury could have reasonably rejected Benaffane's justification defenses and concluded beyond a reasonable doubt that he committed murder. *See Zuliani*, 97 S.W.3d at 594.

We overrule Benaffane's third issue.

## Jury Charge

In his first and second issues, Benaffane contends that the trial court erred by instructing the jury on (1) provocation and (2) the discussion-of-differences qualification on self-defense. The State contends that both instructions were proper, but even if not, neither harmed Benaffane.

### A. Standard of Review

In analyzing a jury-charge issue, our first duty is to decide if error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Only if we find error do we then consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Error properly preserved by a timely objection to the charge will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this to mean that any harm, regardless of degree, is sufficient to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). However, when the charging error is not preserved "and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171; *see Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) (egregious harm "is a difficult standard to meet and requires a showing that the defendants were deprived of a fair and impartial trial"). Fundamental errors that result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect his defensive theory." *Almanza*, 686 S.W.2d at 172 (citations and quotations omitted).

When considering whether a defendant suffered harm, the reviewing court must consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.*

at 171. The reviewing court must conduct this examination of the record to "illuminate the actual, not just theoretical, harm to the accused." *Id.* at 174; *see Nava*, 415 S.W.3d at 298 (record must disclose "actual rather than theoretical harm").

## B.    Provocation

In his first issue, Benaffane contends that the trial court erred by instructing the jury on provocation.

### 1.    Applicable Law

The use of force against another is not justified if the actor provoked the other's use or attempted use of deadly force. *See* TEX. PENAL CODE §§ 9.31(b)(4), 9.32(a)(1). "[A] charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some words that provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other." *Elizondo v. State*, 487 S.W.3d 185, 197 (Tex. Crim. App. 2016) (quoting *Smith v. State*, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998)).

In deciding whether to give the instruction, the trial court must "decide whether evidence has been presented that *could* support a jury's finding on all three elements of provocation beyond a reasonable doubt." *Id.* "Even though a person

does an act, even a wrongful act, which does indeed provoke an attack by another, if he had no intent that the act would have such an effect as part of a larger plan of doing the victim harm, he does not lose his right of self-defense." *Id.* at 200 (quoting *Smith*, 965 S.W.2d at 518). "[A] finding of insufficient evidence to support a jury's finding of intent occurs only in a few 'exceptional and extraordinary situations'" and is a "rarity." *Id.* at 202; *Smith*, 965 S.W.2d at 518–19. In reviewing the trial court's decision to include a provocation instruction, the appellate court views "the evidence in the light most favorable to giving the instruction," resolving conflicts in the evidence and drawing reasonable inferences in favor of the instruction. *Smith*, 965 S.W.2d at 514.

## 2. Analysis

Benaffane concedes that there was sufficient evidence to support a jury finding on the first two elements of provocation. However, he argues that the trial court erred in submitting the provocation instruction because there was insufficient evidence to support a jury finding on the third element that he provoked Kelly with the intent that he would have a pretext for harming him. In particular, he points out that the evidence shows that he only shot Kelly after being shot several times, and that he only took guns to the confrontation because he knew that Kelly was a pimp and might become violent if Benaffane tried to rescue Morales. The State argues that a rational factfinder could conclude based on all of the evidence surrounding the

12

confrontation that Benaffane provoked Kelly with the intent to harm him, and the jury was not required to accept Benaffane's self-serving testimony regarding his intent in confronting Kelly.

The cases in which Texas courts have concluded that a provocation instruction was improper because there was insufficient evidence to support a finding on the third element of provocation are a "rarity." *See Smith*, 965 S.W.2d at 518–19. Generally, they involve parties who were strangers or circumstances in which it is inconceivable that the defendant orchestrated events to have a pretext to harm the complainant. *See id.* For example, in *Elizondo*, Elizondo, his wife, and brother became involved in an altercation with a nightclub's owner, the owner's son, and some security personnel. 487 S.W.3d at 188. Elizondo ran to his truck and was chased by three of the men. *Id.* Elizondo retrieved his gun and engaged in a struggle beside the truck. *Id.* The nightclub owner approached Elizondo and pointed a gun at him, and Elizondo shot the nightclub owner. *Id.* The Court of Criminal Appeals held that there was insufficient evidence to support a finding on the third element of provocation because Elizondo did not know or seek out the nightclub owner and there was no evidence that he ran to his truck to goad the nightclub owner into following and attacking him. *Id.* at 203. Accordingly, the Court of Criminal Appeals concluded that a jury instruction on provocation was improper. *Id.* at 204.

Other cases in which insufficient evidence supported the third element of provocation are similar. In *Bennett v. State*, 726 S.W.2d 32 (Tex. Crim. App. 1986), the defendant was accosting his daughter's boyfriend, and a passerby came to the boyfriend's aid and was killed by the defendant. *Id.* at 34. A provocation instruction was not warranted in that case because "[i]t is inconceivable that the defendant orchestrated this set of events as a ploy to kill a man he did not even know." *Smith*, 965 S.W.2d at 518. Likewise, in *Wampler v. State*, 234 S.W.2d 1009 (Tex. Crim. App. 1950), the complainant was a business owner at his place of business late at night, heard someone at the back door, and shot at him. *Id.* at 1009. The man at the back door, a night watchman in the area, returned fire and killed the complainant. *Id.* Under these facts, no provocation instruction was warranted. *Id.* at 1010. In another case, *Varnell v. State*, 9 S.W. 65 (Tex. Crim. App. 1888), the complainant attacked the defendant when he discovered the defendant having sex with the complainant's minor daughter, and the defendant killed the complainant in the ensuing altercation. 9 S.W. at 66. The Court of Criminal Appeals observed that a provocation instruction was unwarranted because "it is impossible to fathom, under the facts as stated in the case, that the defendant arranged this set of events to bring on such an attack." *Smith*, 965 S.W.2d at 519.

We conclude that this is not one of the "exceptional and extraordinary" situations in which it is "inconceivable" that Benaffane provoked Kelly with the

14

intent of harming him. *See Elizondo*, 487 S.W.3d at 202; *Smith*; 965 S.W.2d at 518. Unlike in *Elizondo*, this is not a case where Benaffane "did not know [or] seek out" Kelly. *Elizondo*, 487 S.W.3d at 203. To the contrary, Benaffane admitted that he knew of and specifically sought out Kelly in order to confront him with deadly force. *See id.* Benaffane testified that he knew Kelly to be a dangerous person—so dangerous that Benaffane brought two guns and a second person as "back up" to the confrontation. A rational jury could infer from this evidence that Benaffane was aware that Kelly would react in a way that would require him to use the weapon he brought to the confrontation. *See, e.g.*, *Harrod v. State*, 203 S.W.3d 622, 629 (Tex. App.—Dallas 2006, no pet.) (jury could reasonably infer that appellant intended to harm complainant by goading with confrontation based on evidence that appellant knew complainant might react violently to confrontation); *Kelley v. State*, 968 S.W.2d 395, 401 (Tex. App.—Tyler 1998, no pet.) (evidence that appellant, while brandishing gun, confronted complainant about complainant's mistreatment of mother, supported rational inference by jury of third element of provocation). While there was evidence that would have permitted a rational jury to conclude that Benaffane did not provoke Kelly with the intent to harm him—for example, his stated reason for confronting Kelly and the fact that he did not immediately shoot Kelly and shot only after being shot himself—this was conflicting evidence that the jury was entitled to weigh along with all of the other evidence in considering

15

Benaffane's intent in provoking the confrontation. Accordingly, we hold that the trial court did not err by instructing the jury on provocation. *See Elizondo*, 487 S.W.3d at 202; *Harrod*, 203 S.W.3d at 629; *Kelley*, 968 S.W.2d at 401.

We overrule Benaffane's first issue.

## C.    Discussion-of-Differences Qualification

In his second issue, Benaffane contends that the trial court erred by instructing the jury on the discussion-of-differences qualification on self-defense and defense-of-a-third person.

### 1.    Applicable Law

Penal Code Section 9.31(b)(5)(A) qualifies a defendant's claim of self-defense and defense-of-a-third person. It states that the use of force against another is not justified "if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was carrying a weapon in violation of Section 46.02." TEX. PENAL CODE § 9.31(b)(5)(A). A person violates section 46.02 of the Penal Code if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club if the person is not (1) on the person's own premises or premises under the person's control; or (2) inside of or directly en route to a motor vehicle or watercraft that is owned by the person or under the person's control. *See* TEX. PENAL CODE § 46.02(a).

16

**2. Analysis**

**a. Is there error in the charge?**

The guilt-innocence charge was 20 pages long. The first four pages set forth the abstract law of murder and also charged the jury in the alternative with the lesser-included offense of manslaughter. The next four pages set forth the abstract law on self-defense and defense-of-a-third person and applied this law to the case. Next came three pages of instructions regarding two qualifications on self-defense: provocation and discussion-of-differences. The balance of the charge contained definitions pertaining to self-defense and defense-of-a-third person, general instructions, and an extraneous offense instruction.

The discussion-of-differences qualification appeared on page 11 of the charge, after a two-page instruction on provocation. It said:

> You are further instructed as part of the law of this case, and as a qualification of the law on self-defense, that the use of force against another is not justified:
>
> (1) in response to verbal provocation alone;
>
> (2) if the defendant consented to the exact force used or attempted by the other; or
>
> (3) if the defendant sought an explanation from or discussion with the other person concerning the defendant's differences with the other person while the defendant was carrying a weapon in violation of the law.
>
> Our law provides that a person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, and he is not on his own premises or premises under his

17

control, or inside of or directly en route to a motor vehicle that is owned by the person or under his control.

"Handgun" means any firearm that is designed, made, or adapted to be fired with one hand.

Benaffane contends that the trial court improperly submitted this instruction because he was carrying an AK-47, which is not a handgun. The State contends that the instruction was proper because Benaffane did handle a handgun in violation of section 46.02—not on his own premises or inside or directly on route to a vehicle owned by him—when he handed a handgun to Worthy before they entered the club.

It is undisputed that Benaffane did not have a handgun when he approached Kelly, or at any point during their confrontation.[1] Accordingly, he did not seek an explanation from or discussion with Kelly concerning their differences "while . . . carrying" a handgun. *See* TEX. PENAL CODE § 9.31(b)(5)(A). We hold that the trial court erred in submitting the discussion-of-differences qualification instruction to the jury.

### b. Did Benaffane preserve error?

Having found error in the charge, we next consider preservation. *Tottenham*, 285 S.W.3d at 30. Error preservation "is not an inflexible concept." *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013). "[A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants,

---

[1]     Benaffane was not charged under the law of parties.

18

why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

The State argues that Benaffane's appellate argument that there is no evidence that he unlawfully carried a handgun while confronting Kelly does not comport with Benaffane's objection to the instruction in the trial court and therefore he has not preserved error. The record reflects that Benaffane lodged the following objections to the discussion-of-differences instruction:

> The limiting instruction regarding seeking an explanation while unlawful [sic] carrying a weapon, the defense objects to that charge. *I don't believe there's evidence in the record of unlawful carry at all in terms of evidence before this jury.* But on top of that, there certainly is not evidence of the defendant seeking an explanation. All the evidence was that he went and arrived, not seeking explanation, but with the intent to threaten deadly force to rescue Amanda Morales. There was no evidence of him seeking an explanation; therefore, the instruction should not be included.

(Emphasis added.) Thus, Benaffane argued that the instruction should not be submitted to the jury at all because there was no evidence that he unlawfully carried a handgun while confronting Kelly. The record thus reflects that Benaffane's objection was two-fold—one, that there was no seeking of an explanation (an argument Benaffane does not raise on appeal), and two, that there was no evidence Benaffane carried a handgun as contemplated by the instruction (the argument that

19

Benaffane raises on appeal). The State understood and responded to this latter argument:

> To the unlawful carrying grounds, I think there was evidence from testimony yesterday from the defendant that he entered the club—or he exited the vehicle, removed a handgun, and while not directly en route to his vehicle or premises controlled by him, he then removed the Glock .40 caliber handgun, gave it to Hasson Worthy and then entered the club.

We therefore conclude that Benaffane's objection was sufficient to preserve the error he complains of on appeal. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (noting that issue preserved without having been explicitly stated if "there have been statements or actions on the record that clearly indicate what the judge and opposing counsel understood the argument to be"); *Lankston*, 827 S.W.2d at 909 (in issue-preservation context, there are "no technical considerations or form of words to be used"); *see also State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013) (although defendant's challenge "could have been more clearly presented," "magic language" was not required).

### c. Was the error harmless?

Because Benaffane preserved his complaint, we must reverse unless the error is harmless. *See Almanza*, 686 S.W.2d at 171*; see also Arline*, 721 S.W.2d at 351 (any harm, regardless of degree, is sufficient to require reversal). To gauge harm, we review (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and

20

(4) any other relevant information revealed by the record of the trial as a whole. *See Almanza*, 686 S.W.2d at 171.

*The entire charge*

Benaffane argues that the discussion-of-differences instruction was harmful because it instructed the jury that it could not find that he acted in self-defense *because* he was carrying a handgun. But that is a mischaracterization of the instruction. The jury was instructed that it could not find that Benaffane acted in self-defense *if* the jury found that he was carrying a handgun—defined as "any firearm that is designed, made, or adapted to be fired with one hand"—*while* he "sought an explanation from or discussion with" Kelly. Thus, contrary to Benaffane's argument, the discussion-of-differences instruction did not compel the jury to find against Benaffane. We assume that the jury followed the instructions in the charge absent evidence to the contrary. *See Miles v. State*, 204 S.W.3d 822, 827–28 (Tex. Crim. App. 2006). We note also that the discussion-of-differences instruction came after a two-page instruction regarding provocation. Thus, the jury would reach provocation before it considered the discussion-of-differences instruction.

*The evidence*

Given the evidence, including Benaffane's concession that he sought Kelly out, with Worthy as his back-up, and the video of Benaffane and Worthy

21

confronting an unarmed Kelly with raised guns, it is unlikely that the jury would have concluded that Benaffane did not provoke the difficulty. And the jury would only consider provocation if it first concluded that Benaffane's confrontation of Kelly with a weapon was reasonable and immediately necessary. The State adduced strong evidence that Benaffane's confrontation of Kelly was not reasonable or immediately necessary: evidence of the plan to confront Kelly with guns drawn, that Benaffane and Worthy spent nearly 10 minutes lying in wait in the club, that Kelly did not appear to be harming or threatening harm to Morales, and that Benaffane had plenty of time to call police but never did. And the evidence supporting Benaffane's claim that deadly force was reasonable and immediately necessary depended largely upon the jury finding Benaffane to be credible and agreeing with his assessment that Kelly, though sitting in a club, unarmed and not appearing to harm Morales, was threatening imminent unlawful force against Morales or was imminently going to kidnap, rob, or sexually assault her. In short, given the state of the evidence, it is highly likely that the jury would have rejected Benaffane's justification theories without reaching provocation or the discussion-of-differences issues.

### *Counsel's argument*

In closing argument, the State told the jury that there were five bases upon which it could find Benaffane guilty of murder. The first three were reasons to

reject Benaffane's self-defense and defense-of-a-third-person theories: the evidence showed that (1) Benaffane's use of force was not proportional to Kelly's, (2) was not reasonable, and (3) was not immediately necessary. The fourth basis was the discussion-of-differences qualification, which the State erroneously argued applied because Benaffane gave the handgun to Worthy as they prepared to confront Kelly. Finally, the State addressed the provocation qualification, which it described as the "biggest slam-dunk." The State told the jury that provocation was the easiest and best path to conviction because the evidence clearly established that Benaffane provoked the controversy in order to harm Kelly.

Defense counsel's argument focused on the State's arguments regarding provocation and whether Benaffane's actions were reasonable and immediately necessary. Counsel also argued correctly that the discussion-of-differences qualification did not apply because Benaffane was not carrying a handgun while he confronted Kelly. Defense counsel further argued that the qualification did not apply because Benaffane "wasn't there to discuss anything . . . [or] to seek an explanation," but instead, "[h]e was there to threaten the use of deadly force right from the outset to prevent what he perceived to be his girlfriend being taken over by a pimp, kidnapped to be sexually assaulted, sexually abused." Counsel emphasized repeatedly that Benaffane threatened deadly force in order to protect Morales.

Having reviewed the entire record in light of the *Almanza* factors, we conclude that the trial court's inclusion of the discussion-of-differences instruction in the jury charge was harmless. *See* 686 S.W.2d at 174 (court must examine record to "illuminate the actual, not just theoretical, harm to the accused"); *Nava*, 415 S.W.3d at 298 (record must disclose "actual rather than theoretical harm" to warrant reversal based upon charge error). The focus of the evidence and argument was on justification—whether Benaffane's use of deadly force was reasonable and immediately necessary. The evidence weighed strongly in the State's favor. The next most central issue raised by the evidence and argument was whether Benaffane provoked the difficulty. The discussion-of-differences issue was a distant third in terms of importance and centrality and, although the trial court erred in giving the charge, Benaffane's counsel ameliorated the error by correctly telling the jury in closing that the facts did not support the application of the discussion-of-differences qualification. Accordingly, we conclude that there is no actual likelihood that the inclusion of the discussion-of-differences qualification harmed Benaffane. *See Almanza*, 686 S.W.2d at 171, 174.

We overrule Benaffane's second issue.

24

**Motion for Mistrial**

In his fourth issue, Benaffane argues that the trial court erred by denying his motion for mistrial after the prosecutor asked Benaffane whether he was aware that Morales had been indicted for murder.

**A.    Standard of Review and Applicable Law**

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Id.* (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.* (citing *Ladd*, 3 S.W.3d at 567).

A trial court's denial of a mistrial is reviewed for an abuse of discretion. *Id.* An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

Because it is an extreme remedy, a mistrial should be granted "only when residual prejudice remains" after less drastic alternatives are explored. *Id.* at 884–

25

85 (quoting *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005)). Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative. *Id.* at 885 (citing *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004)). The asking of an improper question will seldom call for a mistrial because, in most cases, any harm can be cured by an instruction to disregard and we presume that the jury followed the trial court's instruction in the absence of evidence to the contrary. *See Ladd*, 3 S.W.3d at 567; *Burke v. State*, 371 S.W.3d 252, 259 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd).

**B.    Analysis**

Benaffane contends that the trial court erred in denying a mistrial after the prosecutor asked Benaffane if he was aware that Morales had been indicted for murder during the following colloquy:

> Prosecutor: Now what was [Morales's] involvement in this shooting? Just telling you where he was?
>
> Benaffane: Just telling me where they were going.
>
> Prosecutor: And you've seen the video. You also know that she hides or puts the guns in your trunk, correct?
>
> Benaffane: Correct.
>
> Prosecutor You know, the weapons used to kill Dontrell Kelly were put in your trunk?

26

Benaffane: Correct.

Prosecutor: And are you saying she had no involvement in this shooting at all?

Benaffane: No, she had nothing to do with it.

Prosecutor: Would it surprise you to know she's been indicted for murder as well?

Defense counsel: Your Honor, I'm going to object to relevance, 403.

The Court: Sustained.

Prosecutor: May we approach?

The Court: Yes.

(At the Bench, on the record.)

Prosecutor: If she's being painted as an innocent third party in this case that had nothing to do with the shooting, she's been indicted, she's been charged with murder. I think it's relevant. I don't think that the jury should be left with a misimpression that she's completely innocent in this.

The Court: What's your response?

Defense counsel: Under defensive theory of defense of a third party, you can look at things from the perspective of the accused. It's how he perceived her in terms of what she's going through as to what's relevant. The fact the State chose to indict her, I don't think is relevant.

The Court: I agree. The objection's sustained.

Defense counsel: I ask you to instruct the jury to disregard, but I don't think that will be enough so I move for a mistrial.

(Conclusion at the Bench.)

The Court: The jury will disregard the last statement.

Defense counsel: Motion's overruled?

The Court: The motion's overruled. Denied.

The evidence before the jury showed that Morales helped to remove the guns from the scene, showing that she had some involvement in the incident, at least in its aftermath. The trial court instructed the jury to disregard the question regarding her indictment. Similar comments have been held curable by instruction to disregard. *See, e.g.*, *Carroll v. State*, No. 01-89-00398-CR, 1991 WL 423, at *2 (Tex. App.—Houston [1st Dist.] Jan. 3, 1991, no pet.) (not designated for publication) (instruction to disregard question regarding whether witness had heard defendant had been indicted cured any error). Considering all of the evidence and the arguments before the trial court, we conclude that the prosecutor's question was not so prejudicial or incurable that the trial's court's instruction to disregard the question could not cure any harm the question may have caused. *See Ladd*, 3 S.W.3d at 567; *see also Carroll*, 1991 WL 423, at *2. We presume the jury followed the trial court's instruction and the record does not contain anything that would suggest otherwise. *See Burke*, 371 S.W.3d at 259. Accordingly, we hold that the trial court did not abuse its discretion in denying the motion for mistrial. *See Ladd*, 3 S.W.3d at 567; *Carroll*, 1991 WL 423, at *2.

We overrule Benaffane's fourth issue.

**Evidentiary Rulings**

In his fifth, sixth, and seventh issues, Benaffane challenges the trial court's admission and exclusion of various types of evidence during the guilt innocence-phase. In his fifth issue, Benaffane contends that the trial court erred by permitting the State to question him about his teardrop tattoos. In his sixth issue, Benaffane contends that the trial court should have permitted him to introduce photographs and oral testimony to prove Kelly was soliciting Morales to work as his prostitute. In his seventh issue, Benaffane contends that the trial court should have permitted him to testify that during the encounter with Morales's former pimp, the pimp said, "Give me back my b****." In his eighth issue, Benaffane complains that the trial court abused its discretion by admitting during the punishment phase an out-of-state judgment of conviction.

**A.      Standard of Review**

We review a decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010) (citing *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996)). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Zuliani*, 97 S.W.3d at 595). In contrast, a trial court does not abuse its discretion if any evidence supports its decision. *Osbourn v. State*,

92 S.W.3d 531, 538 (Tex. Crim. App. 2002) (citations omitted). We uphold a trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (citing *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982)).

Even if a trial court errs by improperly admitting evidence, reversal is warranted only if the appellant demonstrates that the erroneous admission affected his substantial rights. TEX. R. APP. P. 44.2(b); *Kibble v. State*, 340 S.W.3d 14, 20 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Cruz v. State*, 238 S.W.3d 381, 386 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). An error affects an appellant's substantial rights "when it has a substantial and injurious effect or influence in determining the jury's verdict." *Cruz*, 238 S.W.3d at 386 (citing *Johnson v. State*, 803 S.W.2d 272, 291 (Tex. Crim. App. 1990)). An error that did not influence the jury or had but a slight effect on the jury is not reversible. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (nonconstitutional error is not grounds for reversal if, "after examining the record as a whole," there is "fair assurance that the error did not influence the jury, or had but a slight effect.") (quoting *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)); *McRae v. State*, 152 S.W.3d 739, 744 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (citing *Solomon*, 49 S.W.3d at 365). In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including

30

any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. *McRae*, 152 S.W.3d at 744 (citing *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003)). We should also consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Id.*

**B. Applicable Law**

To be admissible, evidence must be relevant. TEX. R. EVID. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action." TEX. R. EVID. 401. Thus, when assessing the relevance of particular evidence, courts must consider the purpose for which the proof is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). It is essential that there be a direct or logical connection between the proof and the proposition sought to be proven. *Id.*

Evidence of extraneous crimes, wrongs, or other acts is not admissible at the guilt-innocence phase "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but is admissible to prove other matters, such as "motive, opportunity, intent, preparation,

plan, knowledge, identity, absence of mistake, or lack of accident" if the accused is given reasonable notice of the State's intent to introduce the evidence. TEX. R. EVID. 404(b) (extraneous evidence must have probative value beyond character conformity to be admissible). Further, rebuttal of a defensive theory is also "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

"However, even if the evidence is relevant, and the purpose for which it is being offered is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990)). Under a Rule 403 analysis, we consider: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The trial court is presumed to have conducted the proper balancing test if it overrules a 403

objection, regardless of whether it conducted the test on the record. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).

## C. Analysis

### 1. Teardrop Tattoos

In his fifth issue, Benaffane argues that the trial court erred by admitting a photograph showing his tattoos and permitting the State to question Benaffane about them. Benaffane contends this evidence was not relevant, and that it is an extraneous bad act subject to no Rule 404(b) exception. Benaffane also argues that evidence of the tattoos was unduly prejudicial under Rule 403 because it is "[c]ommon knowledge" that a "teardrop tattoo is obtained in prison and generally signifies that the person has killed another."

At trial, Benaffane covered his teardrop tattoos with a band-aid. When the State sought to introduce a photograph of Benaffane with the tattoos visible, Benaffane's counsel objected, "Relevance 404(b), 403," and the trial court overruled the objection. The State then briefly questioned Benaffane about when he got the tattoos and why he got them, and Benaffane responded that he got them in late 2014 because he was "going through a lot" and "they represent pain." The State then moved on, did not return to the topic, and did not mention the tattoos in closing. On redirect, Benaffane's counsel asked him about why he got the tattoos and he responded, "At that time I was going through a lot. To me, it represents

33

pain. I don't even know why I got them. I regret them." His counsel then asked, "You understand that other people perceive things differently as to what teardrop tattoos mean?," and Benaffane responded, "Now I do." The tattoos were not further discussed.

Even if the trial court erred in admitting evidence regarding the teardrop tattoos, Benaffane has not demonstrated that the admission affected his substantial rights. TEX. R. APP. P. 44.2(b). The disputed issue at trial was whether Benaffane's use of deadly force was reasonable and immediately necessary, and the nature of the evidence supporting the jury's verdict was strong. The video evidence and Benaffane's admissions at trial regarding the time he waited before confronting Kelly and his failure to contact the police about the purportedly dire situation, along with the evidence that Benaffane and Worthy confronted an unarmed Kelly with guns raised, provide ample support for the jury's verdict. *See McRae*, 152 S.W.3d at 744. And although the evidence of the tattoos was not cumulative of other evidence, it was only briefly addressed during the trial and not mentioned in closing. *See id.* Thus, this evidence is insignificant in comparison to the totality of evidence adduced at trial and, if it influenced the jury at all, would have had but a slight effect. *See id.* After examining the record as a whole, we cannot say that the admission of this evidence, if erroneous, affected Benaffane's substantial rights. We therefore hold that any alleged error in admitting the evidence does not

34

constitute reversible error.  *See* TEX. R. APP. P. 44.2(b); *Solomon*, 49 S.W.3d at 365; *McRae*, 152 S.W.3d at 744.

We overrule Benaffane's fifth issue.

### 3.    Kelly's Solicitation of Morales

In his sixth issue, Benaffane complains that the trial court erred by excluding evidence that Kelly was soliciting Morales to work as his prostitute.  Specifically, Benaffane sought to question an investigating officer about a series of Instagram communications between Kelly and Morales and to admit pictures of several of the communications which purported to show Kelly attempting to solicit Morales to work as his prostitute.  Benaffane argues that he offered this evidence to show that he believed Kelly to be a pimp, which was relevant to his state of mind and motivation on the night of the shooting.  The State objected on the grounds of hearsay and relevance, and the trial court sustained the objection.

However, even if the trial court erred in excluding this evidence, Benaffane has not demonstrated that the exclusion affected his substantial rights.  TEX. R. APP. P. 44.2(b).  Benaffane argues that he was harmed because this evidence showed that Kelly was a pimp, which supports Benaffane's claim that he was justified in confronting Kelly because of his experience with Morales's former pimp.  But there was other evidence admitted at trial that demonstrated that Kelly was a pimp.  The investigating officer testified that Morales told him that she was taken to Vibe by

35

Kelly, who was a pimp, and Benaffane testified that Morales called and told him that she was with Kelly, who was a pimp. In other words, there was ample evidence introduced to show that Benaffane believed Kelly to be a pimp, and the State did not dispute that he was. The central question in the case was not whether Benaffane believed Kelly was a pimp—which is what Benaffane argues the excluded evidence would have shown—but rather, whether the force Benaffane used against Kelly was reasonable and immediately necessary. After examining the record as a whole, we cannot say that the exclusion of this evidence, even if erroneous, affected Benaffane's substantial rights, and therefore we hold that any alleged error in excluding the evidence does not constitute reversible error. *See* TEX. R. APP. P. 44.2(b).

We overrule Benaffane's sixth issue.

### 4. Former Pimp's Statement

In his seventh issue, Benaffane challenges the trial court's exclusion of his testimony that, during a threatening encounter with Morales's former pimp, the former pimp stated "Give me back my b****." Benaffane argues that this evidence demonstrated why he feared that Kelly would treat Morales as property and potentially abduct her, and it was offered to establish the effect the words had on him. The State argues the statement was properly excluded as hearsay.

The trial court permitted Benaffane to testify about the details of his encounter with Morales's former pimp, except for the statement "Give me back my b****." Benaffane testified that he was picking Morales up from the club where she danced shortly after they began dating when Morales's former pimp blocked Benaffane's car with his own, stuck a gun in his waistband, and approached Benaffane's car. Benaffane testified that Morales, who had gotten into the car with him, fled back into the club in fear. Benaffane also testified that after this incident, he became concerned for his and Morales's safety and purchased two guns—the guns used in the confrontation with Kelly. But the trial court sustained the State's hearsay objection to Benaffane's testimony that after approaching Benaffane's car, the former pimp stated, "Give me back my b****." Benaffane argues that the statement was not hearsay because it was not offered to prove the truth of the matter asserted but to show why Benaffane feared Morales's being in the company of another pimp.

Even if the trial court erred by excluding Benaffane's testimony about the statement made by Morales's former pimp, this error is reversible only if it affected Benaffane's substantial rights. TEX. R. APP. P. 44.2(b). Here, the jury heard Benaffane's testimony that the former pimp confronted him and Morales in a threatening manner with a gun shortly after Morales began dating Benaffane and stopped working for the pimp. According to Benaffane's testimony, the incident provoked so much fear in Morales that she ran away. Benaffane also testified that

it was this incident that led him to believe that he needed to buy guns for protection, although he had never owned guns before. Although the former pimp's statement provides more color about the threatening encounter, we cannot conclude that excluding the statement, even if error, had "a substantial and injurious effect or influence in determining the jury's verdict." *Cruz*, 238 S.W.3d at 386. Benaffane was able to adduce evidence showing the threatening interaction with the former pimp, but more importantly, Benaffane adduced ample evidence that he believed pimps are violent and consider those who work for them to be property. But the central question in this case was whether Benaffane reasonably believed that the force he used against Kelly was immediately necessary. *See Motilla*, 78 S.W.3d at 355 (error that had but slight effect on jury is not reversible); *McRae*, 152 S.W.3d at 744 (in assessing likelihood that jury's decision was adversely affected by error, court considers whole record, including nature of evidence supporting verdict and character of alleged error and how it might be considered in connection with other evidence in case). After examining the record as a whole, we cannot say that the exclusion of this statement, even if erroneous, affected Benaffane's substantial rights, and therefore we hold that any alleged error in excluding the evidence does not constitute reversible error. *See* TEX. R. APP. P. 44.2(b).

We overrule Benaffane's seventh issue.

**5. Out-of-state judgment of conviction**

**a. Applicable Law**

Pursuant to article 37.07 of the Code of Criminal Procedure, after a defendant has been found guilty, the State may offer evidence about the defendant "as to any matter the court deems relevant to sentencing." TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1). Relevant evidence in this context is any evidence that assists the factfinder in determining the appropriate sentence given the particular defendant in the circumstances presented. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). This evidence includes, but is not limited to, evidence regarding:

> the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1); *see Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999). "Prior crimes or bad acts are introduced to provide additional information which the jury may consider in determining what sentence the defendant should receive." *See Arthur v. State*, 11 S.W.3d 386, 392 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd) (quoting *Fields*, 1 S.W.3d at 688). The statutory language grants wide latitude in the admission of evidence deemed

relevant. *Contreras v. State*, 59 S.W.3d 362, 365 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

The trial court makes the decision on the threshold issue of admissibility and may not admit extraneous offense evidence unless the evidence is such that a jury could rationally find the defendant criminally responsible for the extraneous offense. *Smith v. State*, 227 S.W.3d 753, 759–60 & n.16 (Tex. Crim. App. 2007). Ultimately, the factfinder must decide whether the extraneous offense was proven beyond a reasonable doubt. *Id.* at 760. Once this threshold is met, the factfinder may use the evidence however it chooses in assessing punishment. *See Fields*, 1 S.W.3d at 688.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific document or mode of proof is required to prove these two elements. *See id.* While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information

40

to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *See id.* at 921–22.

> [O]rdinarily the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle. The pieces standing alone usually have little meaning. However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions.

*Id.* at 923 (quoting *Human v. State*, 749 S.W.2d 832, 835–36 (Tex. Crim. App. 1988)).

The trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece. *Id.* Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle. *Id.* The trier of fact looks at the totality of the evidence admitted to determine (1) whether there was a previous conviction, and (2) whether the defendant was the person convicted. *Id.* If these two elements can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction. *Id.*

### b. Analysis

Benaffane contends that the trial court abused its discretion by admitting a certified copy of a final judgment of conviction and sentence in the Commonwealth of Virginia for the felony offense of grand larceny reflecting the defendant was

41

named "Sufiane Benaffane" and had the same birthday as Benaffane. But even if we assume that the trial court abused its discretion by admitting the Virginia judgment, the erroneous admission of extraneous-offense evidence is not constitutional error and must be disregarded unless it had a substantial and injurious effect or influence in determining the jury's verdict. *See Cruz*, 238 S.W.3d at 386.

Here, considering everything in the record, we conclude that error, if any, in the admission of evidence pertaining to the Virginia conviction did not influence the jury, or at most, had a slight effect. *See Motilla*, 78 S.W.3d at 355 (nonconstitutional error is not grounds for reversal if, after examining record as a whole, there is fair assurance that error did not influence jury, or had but a slight effect). During closing argument in the punishment phase, the State focused on the details of the shooting, including the fact that Benaffane approached an unarmed Kelly and that the jury had already rejected his theories of self-defense or defense of Morales. The State also reminded the jury that another club-goer besides Kelly also was shot during the melee. That victim testified that she would have a bullet permanently lodged in her pelvis as a result.

With respect to extraneous offenses, the State did not mention the Virginia conviction and instead focused on a felon in possession of a weapon charge that was filed against Benaffane based on an event that occurred a month before Benaffane shot Kelly. The State argued "[h]e can't make it a month after committing that

42

offense before he kills a man." The State asked the jury to sentence Benaffane to no less than 50 years, but preferably, life in prison. The only mention of the Virginia conviction in closing was by Benaffane's counsel, who argued that it was a nonviolent offense that occurred when Benaffane was only 19, he successfully completed probation for it, and he had no history of violence.

Considering all of the evidence and the nature of the closing arguments, we are assured that any error in the admission of the Virginia conviction did not influence the jury's punishment or, at most, had "but a slight effect." *Motilla*, 78 S.W.3d at 355. Accordingly, we conclude that Benaffane has not demonstrated that admission of this conviction harmed him. *See id.*

We overrule Benaffane's eighth issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).