**Opinion issued March 13, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00334-CR

———————————

**JORGE CASTILLO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 2350292**

---

## MEMORANDUM OPINION

A jury convicted Jorge Castillo of driving while intoxicated,[1] and the trial court sentenced him to 30 days in jail. In two issues on appeal, Castillo contends he received ineffective assistance of counsel at trial because counsel failed to

---

[1] *See* TEX. PENAL CODE § 49.04(a)–(b).

(1) meaningfully cross-examine, impeach, or rebut the testimony of the patrol officer who administered the field-sobriety test and (2) make a legally supportable argument for suppression of the field-sobriety-test results. Because Castillo has not met at least one element of an ineffective-assistance claim for each contention, we affirm.

## I.    Background

A little after 2 a.m. on March 20, 2021, a patrol officer with the La Porte Police Department saw a car traveling in front of him cross over several lanes without signaling. The patrol officer made a traffic stop and noticed that the driver, Castillo, had "slurred speech," "red glossy eyes," "sluggish" movement, and an "odor of alcohol." Castillo admitted to having two to three drinks and consented to field-sobriety testing.

The standard field-sobriety testing developed by the National Highway Traffic Safety Administration ("NHTSA") involves three tests: the horizontal gaze nystagmus ("HGN"), the walk and turn, and the one-leg stand.[2] The patrol officer

---

[2]    Castillo asks us to take judicial notice of the (1) 2018 NHTSA Participant Manual for DWI Detection and Standardized Field Sobriety Testing and (2) 2018 NHTSA Instructor Guide for DWI Detection and Standardized Field Sobriety Testing, which were in effect at the time of Castillo's arrest but not included in the record. *See* NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., *Participant Manual: DWI Detection & Standardized Field Sobriety Testing (SFST)* (2018), https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/sfst_full_participant_manual_2018.pdf; NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., *Instructor Guide: DWI Detection & Standardized Field Sobriety Testing (SFST)* (2018), https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/sfst_full_instructor_manual_2018.pdf. This Court and others have taken judicial notice of NHTSA manuals before. *See, e.g.*, *Emerson v. State*, 880 S.W.2d 759, 765–69 (Tex. Crim. App.

2

determined that Castillo could not perform either the walk and turn or the one-leg stand because of a preexisting back injury, so only the HGN test was administered. Castillo told the patrol officer that he had a "dropped eye socket," which the patrol officer interpreted as meaning a "lazy eye." But the patrol officer did not notice a lazy eye when he checked Castillo's eyes for tracking ability and pupil size, which were both equal. According to the patrol officer, Castillo demonstrated all six clues indicating intoxication—lack of smooth pursuit, nystagmus or an involuntary jerking movement in both eyes at maximum deviation, and onset of nystagmus before 45 degrees in both eyes.

Castillo was arrested for driving while intoxicated and verbally consented to giving a blood sample, which was drawn about an hour and a half after the traffic stop and two and a half hours after Castillo's last drink. Testing of the blood sample showed that Castillo's blood-alcohol content exceeded the legal limit for driving at the time of the blood draw. A retrograde extrapolation to determine Castillo's blood-alcohol content at the time of the stop was not performed.

After a trial at which the patrol officer testified about Castillo's traffic stop and arrest and a forensic toxicologist testified about the blood-sample testing and

---

1994) (taking judicial notice of HGN technique as set out in NHTSA manual); *Kirby v. State*, No. 01-07-00444-CR, 2008 WL 2930181, at *3–6, n.5 (Tex. App.— Houston [1st Dist.] July 31, 2008, no pet.) (mem. op., not designated for publication) (same). And we do so here.

results, the jury convicted Castillo.  He was sentenced to 30 days in county jail.  This appeal followed.

## II.    Ineffective Assistance of Counsel

Both of Castillo's issues on appeal challenge whether counsel provided ineffective assistance at trial because he failed to meaningfully challenge the admissibility and credibility the HGN evidence, which was critical to the State's case.  In his first issue, Castillo argues that no competent attorney would have failed to cross-examine, impeach, or rebut the patrol officer's "scientifically incorrect" testimony about HGN-testing procedure, statistics, and data.  And in his second issue, Castillo argues that counsel unreasonably failed to present two "legally supportable" theories for suppressing the HGN-test results: (1) the patrol officer did not follow the NHTSA manual when he administered the smooth-pursuit phase of the test; and (2) Castillo had an eye injury that invalidated the test results.  But for counsel's failures, Castillo says, he would not have been convicted because the State's only other evidence of intoxication was "unreliable blood test results" and "some video footage of Castillo exhibiting behavior that could be attribut[ed] to his disabilities."

### A.    Standard of review

The United States Constitution and the Texas Constitution guarantee individuals the right to assistance of counsel in a criminal prosecution.  U.S. CONST.

amend. VI; TEX. CONST. art. 1, § 10. This right to counsel is more than the mere presence of a lawyer; it is a right to effective assistance. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012) (observing that "the right to counsel preserves the fairness, consistency, and reliability of criminal proceedings by ensuring that the process is an adversarial one."). Effective assistance is not "errorless counsel," but rather "objectively reasonable representation." *Lopez*, 343 S.W.3d at 142.

We evaluate claims that counsel was constitutionally ineffective under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, the appellant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 687–94; *Lopez*, 343 S.W.3d at 142. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The appellant must establish both *Strickland* prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

In reviewing counsel's performance, we look to the totality of the representation to determine counsel's effectiveness, indulging a strong presumption

that his performance fell within the wide range of reasonable professional assistance and trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "[T]rial counsel should ordinarily be afforded an opportunity to explain his action before being denounced as ineffective." *Id.* (quotation omitted). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

## B. Failure to cross-examine or impeach the patrol officer's testimony

Castillo argues that counsel provided ineffective assistance by failing to meaningfully cross-examine or impeach the patrol officer's testimony about HGN-testing procedure, statistics, and data. Specifically, Castillo argues that counsel should have used the NHTSA manual to challenge the patrol officer's "scientifically incorrect" testimony on:

- the reliability of HGN testing when conducted alone;

- whether lighting or weather conditions can affect the test results;

- whether the HGN test involves a neurological function; and

- the proper way to conduct the smooth-pursuit phase of the test.

Castillo also argues that counsel should have "followed through on cross-examination about the effect of an eye disorder or injury on [the] officer's decision to conduct the HGN test." According to Castillo, counsel's failure to challenge the patrol officer's testimony on these subjects can only be attributed to a "lack of preparedness," and not a "strategic choice."

In considering Castillo's complaint, we are mindful that "[c]ross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005). "Furthermore, cross-examination is an art, not a science, and it cannot be adequately judged in hindsight." *Id.*

The record here contains no explanation for why counsel decided not to cross-examine or impeach the patrol officer about the complained-of testimony. This silence makes the cases Castillo relies on to show ineffective assistance distinguishable.

For instance, Castillo relies on *Ex parte Ard* to support his argument that the failure to present expert testimony constitutes ineffective assistance. *See* No. AP-75704, 2009 WL 618982, at *2 (Tex. Crim. App. 2009) (mem. op., not designated

7

for publication). But *Ard* was decided on a record developed through post-conviction writ proceedings. *Id.* at *1. The applicant, who was convicted of aggravated sexual assault of a child, argued that his trial counsel rendered ineffective assistance by failing to adequately present expert testimony on memory implantation. *Id.* at *2–3. Memory implantation was a critical issue for the defense, which rested on a theory that the complainant's accusations resulted from suggestion and coaching that tainted his memory. *Id.* at *2. The applicant argued that expert testimony on the scientific basis of memory implantation might have convinced the jury that the complainant's version of events was unreliable. *Id.* And the Court of Criminal Appeals agreed after considering a record that included statements from trial counsel about the defensive strategy and testimony showing the substantive and comprehensive differences in the expert's trial and writ-hearing testimony. *Id.* at *3–5.

Likewise, the Court of Criminal Appeals' decision to grant post-conviction habeas relief in *Ex parte Saenz* rested on a developed record. *See* 491 S.W.3d 819, 828–29 (Tex. Crim. App. 2016). There, the applicant sought relief from murder and aggravated-assault convictions based on trial counsel's failure to impeach the complainant with a prior inconsistent statement to police. *Id.* at 821. The complainant, who had been shot in the back in a drive-by shooting, told police that he could not identify the shooter after the shooting. *Id.* at 822. But he purported to

identify the applicant as the shooter at trial. *Id.* at 823. The record included deposition testimony from trial counsel that the defensive strategy was to challenge the complainant's credibility, that he knew the complainant told police that he would not recognize the shooter, that it would have been a mistake not to impeach the complainant with the prior inconsistent statement, and that such an omission likely would have an oversight on his part. *Id.* at 827. In criticizing the habeas court's finding that trial counsel's failure to impeach the complainant could have been a strategic choice, the Court noted the posture of the case and the state of the record:

> If this case were before us on a petition for discretionary review with an undeveloped record, [the habeas court's] speculation might well be founded. . . . [I]n the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined, . . . and will not conclude the challenged conduct constituted deficient performance unless [it] was so outrageous that no competent attorney would have engaged in it.

*Id.* at 828 (quotation omitted). But because the record was developed and trial counsel had responded to the allegations of ineffectiveness, the Court could conclude that counsel's decision was not strategic. *Id.*

Although Castillo has cited other cases involving direct appeals, rather than post-conviction writs, they too benefited from developed records. *See, e.g.*, *Fulton v. State*, 576 S.W.3d 905, 917 (Tex. App.—Tyler 2019, pet. ref'd) (record supporting claim that counsel was ineffective for failing to impeach an eyewitness was developed as part of motion for new trial). In contrast here, Castillo did not move

9

for a new trial or take any other steps to develop the record on appeal. His suggestion that cross-examination should have been conducted in a different way "does not rebut the presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Resendiz v. State*, 112 S.W.3d 541, 548 (Tex. Crim. App. 2003). For example, even if, as Castillo suggests, the patrol officer incorrectly testified that the accuracy rate of HGN testing is 88 percent when conducted alone, rather than 77 percent, we cannot say that a strategic decision not to emphasize the 77 percent accuracy rate would be objectively unreasonable. Nor can we say that it would be objectively unreasonable to decide not to cross-examine the patrol officer about eye disorders when the patrol officer testified that Castillo qualified for the HGN test because he had equal tracking and pupil size.

In short, we cannot say on this record that counsel's failure to cross-examine or impeach Officer Ellis fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88. We overrule the part of Castillo's first issue claiming counsel was ineffective for failing to meaningfully impeach or cross-examine the patrol officer. *See id.*; *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

## C. Failure to call a rebuttal expert

Like cross-examination, the decision whether to present witnesses is largely a matter of trial strategy. *Shanklin v. State*, 190 S.W.3d 154, 164 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd). To prevail on his claim that counsel was ineffective for failing to call an intoxication expert witness to rebut the patrol officer's testimony about the HGN testing, Castillo must show that an intoxication expert was available and would have testified in a manner beneficial to him. *See Noriega v. State*, No. 01-16-00404-CR, 2017 WL 3597732, at *5 (Tex. App.—Houston [1st Dist.] Aug. 22, 2017, no pet.) (mem. op., not designated for publication); *Jones v. State*, 500 S.W.3d 106, 116 (Tex. App.—Houston [1st Dist.] 2016, no pet.). But Castillo has not done so, and thus the record does not contain the evidence necessary to overcome the presumption that counsel's actions were reasonable, professional, and motivated by sound trial strategy. *See, e.g.*, *Rivera v. State*, No. 01-18-00078-CR, 2019 WL 2041058, at *3 (Tex. App.—Houston [1st Dist.] May 9, 2019, pet. ref'd) (mem. op., not designated for publication) (rejecting claim that trial counsel was ineffective for failing to obtain an expert in cell-site location information because record did not show counsel's reasons for not obtaining such an expert, how such an expert could have assisted trial counsel, or "the substance of the testimony that such an expert could have provided"); *Jones*, 500 S.W.3d at 116 ("Though appellant suggests two categories of expert testimony that

would have assisted in his defense, he has not adduced evidence showing that such experts were available or that either could have offered beneficial testimony.").

We hold that Castillo has not met *Strickland*'s first prong requiring proof that counsel's performance fell below an objective standard of reasonableness, and we overrule the part of Castillo's first issue claiming counsel was ineffective for failing to call a rebuttal expert on intoxication. *See Strickland*, 466 U.S. at 687–88; *see also Williams*, 301 S.W.3d at 687.

## D. Failure to suppress HGN evidence

Castillo next complains that counsel should have filed a motion to suppress the HGN evidence because (1) the patrol officer incorrectly administered the smooth-pursuit phase of the test and (2) the test is not reliable when administered to people, like him, who have an eye injury.[3]

### 1. The HGN test

To prevail on his claim that counsel was ineffective for failing to file a motion to suppress, Castillo must show that the result of the proceeding would have been different—that the motion to suppress would have been granted and that the remaining evidence was not enough to support his conviction. *See Jackson*, 973

---

[3]   Castillo acknowledges that counsel filed a pretrial motion to suppress the HGN evidence and objected to its admission at trial. His complaint is that counsel "inexplicably focused on multiple unsupported legal theories of inadmissibility" in challenging the HGN evidence, instead of the potentially winning theories he asserts on appeal.

S.W.2d at 957; *Ex parte Jones*, 473 S.W.3d 850, 854 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (explaining failure to file motion to suppress is not per se ineffective because counsel does not have to file futile motions).

Testimony on HGN testing is considered scientific testimony. *See Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994); *McCarthy v. State*, No. 01-12-00240-CR, 2013 WL 5521926, at *3 (Tex. App.—Houston [1st Dist.] Oct. 3, 2013, no pet.) (mem. op., not designated for publication). Under Texas Rule of Evidence 702, the proponent of scientific evidence must show by clear and convincing proof that the proffered evidence is "sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact in issue." *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *see Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). In a criminal case, the reliability inquiry has three criteria: (1) the underlying scientific theory is valid, (2) the technique applying the theory is valid, and (3) the technique was properly applied on the occasion in question. *Kelly*, 824 S.W.2d at 572. The Court of Criminal Appeals has taken judicial notice of the validity of the scientific theory and technique applying the theory for HGN testing. *See Emerson*, 880 S.W.2d at 769. But the proponent of the evidence must still show that the officer properly applied the HGN test. *See id.*; *see also McRae v. State*, 152 S.W.3d 739, 743 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("HGN evidence is reliable, admissible

scientific evidence under rule 702 when performed by a police officer who is certified by the [NHTSA] and who applies the technique properly." (footnote omitted)). Whether the HGN test is properly applied is decided on a case-by-case basis. *Somers v. State*, 368 S.W.3d 528, 536 n.27 (Tex. Crim. App. 2012).

An officer must follow the standardized procedures set out in the NHTSA manual when administering the HGN test. *Emerson*, 880 S.W.2d at 768; *McRae*, 152 S.W.3d at 743. The officer looks for three criteria: (1) the lack of smooth pursuit—an inability to pursue an objection, or stimulus, moving horizontally across the suspect's field of vision smoothly; (2) distinct and sustained nystagmus at the eye's maximum deviation; and (3) the onset of nystagmus before 45 degrees. *See Emerson*, 880 S.W.2d at 766 (citing 1992 NHTSA manual). An officer must look for these criteria in each eye, for a total of six "clues." *Id.*; *see Compton v. State*, 120 S.W.3d 375, 377–78 (Tex. App.—Texarkana 2003, pet. ref'd) ("In other words, if the person's eyes fail to smoothly follow a stimulus across a field of vision, exhibit nystagmus when held as far to the side as possible, or display nystagmus at an angle prior to forty-five degrees from looking straight ahead, each will be considered a clue indicating possible intoxication."). To ascertain these clues, an officer conducts "passes"—asking an individual to follow an object or stimulus, such as a pen, with their eyes. *See Kamen v. State*, 305 S.W.3d 192, 195 n.1 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The procedures also require an officer to assess possible

medical impairment that could lead to an incorrect determination of intoxication by looking for equal pupil size, equal tracking, and resting nystagmus. *See Emerson*, 880 S.W.2d at 766.

### 2. The trial court could have reasonably denied a motion to suppress

We turn first to Castillo's argument that counsel should have moved to suppress the HGN evidence because the patrol officer administered the smooth-pursuit test too quickly. Specifically, Castillo points to the NHTSA's instruction to move the stimulus "steadily at a speed that takes approximately 2 seconds to bring the eye from center to side." NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., *Participant Manual: DWI Detection & Standardized Field Sobriety Testing* (2018), at VIII-41. He also points to the video of his arrest, which he argues shows the patrol officer taking less than one second to move the stimulus, instead of two. The State responds that Castillo cannot satisfy *Strickland*'s prejudice prong because even assuming he is correct that the patrol officer administered the smooth-pursuit test too quickly, the trial court would not have been compelled to suppress the HGN evidence. In support of their respective positions, Castillo and the State both cite authority from this Court.

To support his position that counsel was ineffective in failing to move to suppress the HGN evidence based on the patrol officer's administration of the test, Castillo relies on this Court's holding in *McRae*. 152 S.W.3d at 743–44. The

appellant in *McRae* argued that the arresting officer's testimony that the appellant had six clues on the HGN test should have been excluded because the officer admitted he incorrectly administered the test. *Id.* at 743. Although the officer initially testified that he administered all three parts of the HGN test to the appellant, he later admitted that he had administered only two of the three parts required by the NHTSA standards. *Id.* He also admitted making several other misstatements about the HGN test. *Id.* When confronted about his errors and asked whether there was a "valid HGN test," the officer replied that there was not. *Id.* at 744. In agreeing with the appellant that the HGN evidence should have been excluded on that basis, this Court observed that, although "[s]light deviations in the administration of the HGN test do not render the evidence inadmissible or unreliable," the officer's own admissions precluded any finding that the HGN technique was properly applied or that any variation from the testing procedure was slight. *Id.*

For its contrary position that counsel was not ineffective, the State relies on *McCarthy v. State*, another DWI case. No. 01-12-00240-CR, 2013 WL 5521926 (Tex. App.—Houston [1st Dist.] Oct. 3, 2013, no pet.) (mem. op., not designated for publication). As in *McRae*, the *McCarthy* appellant argued that the HGN evidence was inadmissible because the officer did not administer the test according to the NHTSA standards. *Id.* at *2. Specifically, the appellant asserted the officer (1) did not make the required number of passes for a complete HGN test, (2) performed the

16

smooth pursuit portion of the test in half the time the NHTSA manual required, and (3) completed the distinct and sustained nystagmus portion too quickly by holding the stimulus at maximum deviation for two or three seconds instead of four. *Id.* at *5. The State responded that the NHTSA manual provided only recommendations for the time and number of passes and that the officer administered the test within acceptable limits. *Id.* The trial court admitted the HGN evidence, concluding that any deviation went to the "weight and not the admissibility" of the evidence. *Id.* This Court agreed. *Id.* at *4–6.

In holding the HGN evidence was admissible in *McCarthy*, the Court distinguished *McRae*. *Id.* at *5. Unlike in *McRae*, the officer in *McCarthy* did not testify that the HGN test was invalid. *Id.* at *5. Instead, the officer testified that, even if he had not performed the test "a hundred percent," he performed all three parts of the test and made an appropriate number of passes. *Id.* The officer also testified that although the NHTSA manual recommends repeating passes, it does not prescribe the number of passes. *Id.* Considering these differences and other evidence that the officer was trained and certified in standard field-sobriety testing, had administered the HGN test many times, asked the appropriate screening questions, checked the appellant's eyes for tracking ability and pupil size to determine whether he could follow the stimulus and whether there were signs of medical impairment, administered all three parts of the test, and explained how he

17

did so, the Court held that the trial court's decision to admit the HGN evidence was not an abuse of discretion. *Id.* at \*7. The Court reasoned that, based on an assessment of arrest video and the officer's testimony, the trial court could have reasonably concluded that the officer properly administered the HGN test or that any variations in the administration of the test were slight and did not affect admissibility. *Id.*

Castillo's case is more like *McCarthy* than *McRae*. Unlike *McRae*, the patrol officer did not admit that Castillo's HGN test was invalid; rather, he testified that he administered the HGN test in accordance with his training and the NHTSA manual's procedures.[4] As instructed in the NHTSA manual, the patrol officer screened Castillo for medical impairment that would affect his performance on the test by confirming that Castillo's eyes tracked equally and had equal pupil size.

We agree with the State that, even if Castillo is correct that the patrol officer took less time than procedure recommends, the trial court reasonably could have found that any variation was slight and did not affect the admissibility of the HGN evidence. *See, e.g.*, *Plouff v. State*, 192 S.W.3d 213, 221 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (rejecting appellant's claim that HGN test results were

---

[4]     The only deviation from procedure the patrol officer acknowledged was making an accommodation for Castillo's back pain by allowing Castillo to sit on the car during the test instead of stand with his feet together. This accommodation is not the subject of any complaint on appeal.

inadmissible because officer performed portions of test too quickly, did not repeat passes, and held stimulus for only one second at maximum deviation); *Compton*, 120 S.W.3d at 378–79 (holding officer's slight deviation in time to conduct lack-of-smooth pursuit and maximum-deviation portions from time recommended in NHTSA manual did not invalidate test results). The NHTSA manual provides only an approximation of the time required for properly conducting the smooth-pursuit test. *See* NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., *Participant Manual: DWI Detection & Standardized Field Sobriety Testing* (2018), at VIII-41. And as the Court of Criminal Appeals has noted, the HGN test will not be administered in strict conformity with an officer's training every time it is performed. *See Emerson*, 880 S.W.2d at 767 (noting "[t]he accuracy of the HGN test has been estimated at various levels, depending on such factors as testing conditions and the ability and experience of those conducting the test").

Likewise, the trial court likely would not have been compelled to exclude the HGN evidence based on Castillo's claimed eye injury, considering the patrol officer's testimony that he asked the appropriate screening questions before administering the HGN test, checked Castillo's eyes for tracking ability and pupil size, and did not see any symptoms of an eye injury. *See McCarthy*, 2013 WL 5521926, at *4 ("Before administering the HGN test, Officer Hardt asked McCarthy the appropriate screening questions. Hardt checked McCarthy's eyes for tracking

19

ability and pupil size to determine whether he could follow the stimulus and whether there were signs of brain injury or illness."); *Liles v. State*, No. 01-08-00927-CR, 2009 WL 3152174, at \*6 (Tex. App.—Houston [1st Dist.] Oct. 1, 2009, no pet.) (mem. op., not designated for publication) ("Secondly, Officer Godden checked to see whether appellant's eyes tracked equally and made sure appellant did not have a 'lazy eye.' Officer Godden testified that appellant had equal tracking. Because Officer Godden testified that he checked appellant for the indicators as he performed the HGN test, Gooden met the requirements of the NHTSA Manual."); *see also Webster v. State*, 26 S.W.3d 717, 722–23 (Tex. App.—Waco 2000, pet. ref'd) (stating that screening for other causes of nystagmus can be performed while conducting HGN test and is consistent with NHTSA manual).

In short, Castillo has not shown that a motion to suppress would have been granted based on either the patrol officer's variation from HGN-testing procedure or an eye injury. Castillo has not met *Strickland*'s second prong requiring proof that the result of the proceeding would have been different. *See Jackson*, 973 S.W.2d at 957. Accordingly, we overrule Castillo's second issue.

### III.    Conclusion

We affirm the trial court's judgment.


Andrew Johnson
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish.  TEX. R. APP. P. 47.2(b).